Block *v.* The State.

Filed Feb. 21, 1885.

———◆———

No. 11,963.

BLOCK *v.* THE STATE.

100 357
155 278
155 279

CRIMINAL LAW.—*Constitutional Law.*—*Impartial Jury.*—*Causes of Challenge.* —The question, what is an impartial juror, is largely a judicial question, in view of the Constitution which in a criminal case guarantees to the defendant a trial by an impartial jury, and hence section 1793, R. S. 1881, so far as it enumerates causes of challenge, excluding all others, is not necessarily conclusive upon the courts.

SAME.—*Challenge of Juror.*—*Deputy Prosecuting Attorney not Competent Juror.*— *New Trial.*—A deputy of the prosecuting attorney, though not a lawyer, is not a competent juror in a criminal cause, and may be challenged; and if the fact be not discovered until after verdict, a new trial should be granted, though he make oath that he was not influenced thereby.

From the Decatur Circuit Court.

*W. A. Cullen, B. L. Smith, C. H. Blackburn, J. K. Ewing* and *C. Ewing,* for appellant.

*F. T. Hord,* Attorney General, *M. D. Tackett,* Prosecuting Attorney, *J. D. Miller* and *F. E. Gavin,* for the State.

NIBLACK, J.—An indictment was returned in the Rush Circuit Court against Jacob Block and Elsie Block, charging them with having killed Eli Frank, on the 30th day of November, 1883, under circumstances which constituted the homicide murder in the first degree.

A change of venue was taken to the Decatur Circuit Court, where Jacob Block, the appellant here, was tried separately, the trial resulting in a verdict of guilty of murder in the second degree, and a sentence to the State's prison for life.

After the return of the verdict, an ineffectual motion for a

new trial was made upon the alleged ground, amongst others, that Sanford Grayson, one of the jurors who tried the cause, was an incompetent juror, and that the fact of his incompetency did not come to the knowledge of the appellant until it was too late to avail himself of it at the trial.

The particular objection urged to Grayson's competency was, that at the time of the trial he was deputy prosecuting attorney for one of the townships of Decatur county, under the prosecuting attorney who conducted the prosecution on behalf of the State. To sustain that objection, a copy of his appointment was exhibited as a part of one of the affidavits filed upon the occasion, which was as follows:

" STATE OF INDIANA, DECATUR COUNTY :

" I, Marine D. Tackett, prosecuting attorney of the Eighth Judicial Circuit of Indiana, of which Decatur county forms a part, hereby constitute and appoint Sanford Grayson deputy prosecuting attorney in and for Sand Creek township, in said county, to act for me and in my stead in any and all matters in which the State of Indiana is or may be a party, and to charge and receive all moneys and fees allowed the prosecuting attorney for services by law, the same as if I myself was present.                    MARINE D. TACKETT,

" Jan. 11, 1883.        Pros. Att'y 8th Judicial Circuit."·

It was further shown by affidavit that at the time Grayson was called and sworn, neither the appellant nor his attorneys knew that Grayson held any position under the prosecuting attorney, and that for that reason he was not interrogated as to the relations which he sustained to that officer.

It was admitted that at the time of his service as a juror, Grayson was deputy prosecuting attorney as charged, but, in support of the verdict, he made affidavit that he was not regularly engaged in the practice of the law; that when he was called as a juror, it did not occur to him that his position as deputy prosecuting attorney for a township merely was or might be considered as constituting an objection to his competency, and that hence he did not call attention to the fact

that he held the position; that his holding the position had no influence whatever upon him in making up the verdict which the jury returned.

The important, and, as we conceive it to be, the controlling, question in this case is, Was Grayson, under the circumstances, a competent juror?

Section 58 of the Bill of Rights, which constitutes a part of our State Constitution, declares that " In all criminal prosecutions the accused shall have the right to a public trial by an impartial jury in the county in which the offence shall have been committed," etc.

Section 1793, R. S. 1881, provides that " The following, and no other, shall be good causes for challenge to any person called as a juror in any criminal trial : "

*First.* That he was a member of the grand jury that found the indictment.

*Second.* That he has formed or expressed an opinion as to the guilt or innocence of the defendant, but specifying and defining certain exceptions to that general disqualification.

*Third.* That he entertains conscientious opinions against affixing the death penalty in cases in which it might be inflicted.

*Fourth.* That he is related within the fifth degree to the injured party.

*Fifth.* That he has already served as a petit juror in the same cause.

*Sixth.* That he has served as a juror in a civil case involving the same transaction.

*Seventh.* That he has been, in good faith, summoned as a witness in the cause.

*Eighth.* That he is an habitual drunkard.

*Ninth.* That he is an alien.

*Tenth.* That he has been called to sit on the jury at his own or some one else's solicitation.

*Eleventh.* That he is biased, or prejudiced, either for or against the defendant.

Section 1794 of the same Revised Statutes directs that "All challenges for cause shall be summarily tried by the court on the oath of the party challenged or other evidence, and shall be made before the jury is sworn."

On behalf of the State, it is argued that a juror in a criminal cause can be challenged for no other causes than those specified in the foregoing section 1793, and that under section 1794 no objection can be made to the competency of a juror after he has been sworn, unless his incompetency was concealed in such a way as made the concealment amount to such misconduct on the part of the juror as tended to prevent a fair trial.

A person, to be qualified as a juror, must be a voter of his county, and a freeholder or householder. R. S. 1881, section 1393. It is a felony for a juror, either before or after he is sworn, to accept a bribe, for which he, amongst other penalties, may be disfranchised for a period of time. R. S. 1881, section 2010. It is, also, fairly implied, that one called as a juror is a person of sound mind, of reasonable intelligence, and able to understand the English language. It will not do, therefore, to hold that either party to a criminal prosecution may be compelled to accept any person as a juror who is not a voter of the county, is not either a freeholder or householder, has accepted a bribe in advance, is of unsound mind, is not of reasonable intelligence, or can not understand the English language.

The right of trial by an impartial jury carries with it, by necessary implication, the right to be tried by a capable, as well as a duly qualified, jury. It, consequently, follows that objections, in the nature, at least, of challenges for cause, other than those enumerated in section 1793, *supra*, may be made to the competency of a person called as a juror. This construction appears to us to be inevitable, when the separate parts of our judicial system are considered together as a whole.

On that subject, Thompson & Merriam on Juries, at section 175, say: "Certain causes of challenge enumerated in a statute

are not exclusive of all others. The grounds of challenge for cause are so various that any attempt to collate them in a statutory provision must necessarily be only partially successful. Causes of a most positive character are liable to arise out of the facts of specific cases, which must result in a failure of justice if the statutory causes only are to be recognized. Such was the rule laid down by the Supreme Court of Alabama, which was afterwards departed from, and still later re-adopted. This rule exists in other States. It results from this consideration: The statutory causes of challenge correspond quite closely to what were termed principal causes of challenge at common law: . But we have hitherto seen that a great variety of objections, not less positive in their character, might arise in any case, namely, causes of challenge to the favor, which in the words of Lord Coke were 'infinite.' Although many of the statutes make no reference to the challenge for favor, still it exists as a challenge for cause."

The doctrine thus enunciated really rests upon the theory that the competency of each particular juror has always very much been, and, in the nature of things, must, to some extent, continue to be, a judicial, and hence not exclusively a legislative, question. The courts are charged with the imperative duty of affording every person accused of crime an opportunity of being tried by an impartial jury, and to that end they are required to exercise every judicial power inherent in courts, not abridged or taken away by some valid legislative enactment.

We said in the case of *Stout* v. *State*, 90 Ind. 1, that "The constitution does not assume to prescribe more than that a juror must be impartial, leaving it to the Legislature and to courts to declare the condition of mind which constitutes impartiality as applied to persons called to serve as jurors."

Where the Legislature, without violating some guaranteed right of the citizen, has assumed to declare who shall be a competent juror with reference to some particular objection

which might otherwise be urged against him, the declaration of the Legislature is binding upon the courts, but in the absence of any legislative declaration on the subject, the competency of each particular person called as a juror becomes a question for judicial decision.

The "bias" which disqualifies a juror is of two kinds, "actual bias" and "implied bias." *Actual,* where a real bias for or against one of the parties exists. *Implied,* where the relations which the juror sustains to one of the parties are such as to raise a presumption of bias in his favor. *Actual* bias is inferred from the simple use of the word "bias" as a term in legal phraseology, and hence the "bias" declared by section 1793, of the criminal code, to be a cause for challenge to a juror, plainly has reference, primarily, to *actual* bias. *Implied* bias has not, therefore, been made a principal cause for challenge by our statute, but continues to belong to that class of objections to a juror which, at common law, could only be made available by a challenge *to the favor.* *Collier* v. *Vason,* 12 Ga. 440.

Coke upon Littleton, 156a, referring to objections which might be made to a panel of jurors summoned by the sheriff, says, that if either of the parties be subject to the distress of the sheriff, if the sheriff have an action of debt against either one of them, or if either be tenant to the sheriff, the jurors summoned by him would be incompetent.

Chitty on Criminal Law, Vol. 1, 542, in speaking of objections which may be made to a juror on the ground of some actual or presumed partiality, illustrates as follows: "Thus also if the juryman be under the power of either party, or in his employment, or if he is to receive part of a fine upon conviction, or if he has been chosen arbitrator, in case of a personal injury, for one of the parties, or has eaten and drank at his expense, he may be challenged by the other. So if there are actions depending between the juryman and one of the parties, which imply hostility, that will be ground of principal

challenge, though other actions only warrant challenges to the favor. And, in general, the causes of this nature, which would justify a challenge to the array, on the ground of the presumed partiality of the sheriff, will be sufficient exceptions to an individual juror."

A person sustaining close business relations with either of the parties to an action, is incompetent to sit as a juror in the cause, as, for example, a partner in business with one of the parties. *Stumm* v. *Hummel,* 39 Iowa, 478. So the clerk of one of the parties to a suit is disqualified from serving as a juror at the trial. *Hubbard* v. *Rutledge,* 57 Miss. 7. An employee of a railroad company is not a competent juror to try a case in which the company is a party. *Central R. R. Co.* v. *Mitchell,* 63 Ga. 173. In this case it was said: "It is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is fed and clothed. Hence the common law excluded all servants, and our statutes have nowhere altered the rule, and it should not be altered. A close relative is a less dangerous juror, if not a dependent kinsman, than one who is dependent on his employer." Coke upon Litt. 156a; Thomp. & Merriam Juries, section 185.

The criminal code of New York adopted in 1881, in section 377, which declares what conditions, or relative conditions, raise the presumption of "implied bias," enumerates, amongst others, the following: Bearing to one of the parties the relation of guardian or ward, attorney or client, or being client of the attorney or counsel for the people (the State), or the defendant, or master or servant, or landlord or tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offence charged, or on whose complaint the prosecution was instituted, or in his employment on wages. The entire section is, in the main, nothing more than a re-assertion, in a new form, of the prin-

ciples and definitions of the common law on the subject of "implied bias," which have always been either expressly or inferentially recognized in this State.

The prosecuting attorney stood, in this case, for and as the representative of the State, and was, by analogy and for all practical purposes, the plaintiff in the prosecution. Grayson, by his appointment as deputy, had become and was the employee and subordinate of the prosecuting attorney, as well as the attorney for the State within certain territorial limits. He was, therefore, *impliedly* biased against the appellant, and hence an improper juror.

It is true, as contended by counsel for the State, that when a juror is called in a criminal cause, the accused is required to use due diligence to ascertain whether he possesses all the usual and most notable qualifications as a juror. *Rice* v. *State*, 16 Ind. 298; *Hudspeth* v. *Herston*, 64 Ind. 133; *Lamphier* v. *State*, 70 Ind. 317; *Adams* v. *State*, 99 Ind. 244; Wharton Crim. Pl. and Pr., section 845; Thompson & Merriam, above cited, sections 298, 302, 303, 339, 428.

In the absence, however, of something to suggest a more extended inquiry, it is doubtless not to be expected that the accused shall, in any event, be required to ask questions not involved in some one of the principal causes for challenge. *Williams* v. *State*, 3 Ga. 453.

As has been shown, the objection to Grayson's competency was not primarily included in any of the principal causes for challenge known to our statutes. It was too remote to have been anticipated by inquiries from any source. Both the prosecuting attorney and Grayson ought to have made known the relation which existed between them. It is claimed that their failure to do so was an inadvertence merely, and there is good reason for believing that it was such only, but the appellant was presumably none the less injured by their failure. It may be that the objection to Grayson's want of qualification to sit as a juror in this case worked no actual injury to the appellant, but, however that may have been,

we can not afford to make the precedent which would be established by our holding that Grayson was a competent juror.

The judgment is reversed, and the cause remanded for a new trial. The clerk will give the necessary notice for a return of the prisoner to the custody of the sheriff of Decatur county.

Filed Feb. 25, 1885.