**John HAAK, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 780 S 204.

Supreme Court of Indiana.

March 10, 1981.

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., George B. Huff, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant John Haak was charged in La-Porte Circuit Court with rape, Ind. Code § 35–42–4–1 (Burns 1979 Repl.). Haak was tried to a jury and convicted as charged. The trial court sentenced him to twenty years imprisonment. This appeal followed. Appellant raises four issues for our consideration. One of these issues requires a reversal of appellant's conviction and a retrial of this cause. Therefore, we shall deal in this opinion only with this issue and an additional question which may arise in a subsequent retrial. The issues we shall dispose of concern: (1) whether the trial court improperly restricted cross-examination of the victim; and (2) whether the trial court erred in refusing to grant a mistrial due to information revealed during trial concerning two of the jurors.

I.

Appellant alleges the trial court improperly restricted his cross-examination of the victim. The record reveals that the victim, L.M., and Haak were second cousins and were acquainted prior to this alleged inci-

dent. L.M. testified that defendant's brother, Robert Haak, was her former boyfriend, but that they had "broken up" four or five years earlier. Appellant attempted to impeach L.M.'s credibility by introducing evidence that she harbored a dislike for appellant's brother, and would try to "get back at" appellant's brother by lashing out in some fashion at appellant. Apparently defense counsel wished the jury to conclude, therefore, that she had fabricated this charge against appellant Haak. The trial court did not permit this line of questioning.

We do not find that the trial court unduly or improperly restricted appellant's right of cross-examination. The scope of cross-examination is, as a general matter, subject to the trial court's discretion. *Ashbaugh v. State*, (1980) Ind., 400 N.E.2d 767, 772; *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223. The court here informed defense counsel that he would permit cross-examination of the victim concerning possible prior animosity toward appellant or any prior adverse relations she had had with him, but would not permit evidence of the type appellant suggested. Clearly, the testimony which appellant wished to adduce concerned a relationship which had existed several years earlier and, in fact, did not directly involve appellant John Haak. The remote character of this proposed testimony far outweighed its limited relevance on the question of L.M.'s credibility. Therefore, the trial court did not abuse its discretion in limiting the cross-examination of L.M. in this fashion. *See Chambers v. State*, (1979) Ind., 392 N.E.2d 1156, 1160. This issue is without merit.

## II.

Appellant Haak argues the trial court erred in refusing to grant his motion for a mistrial. This issue involves the discovery by counsel and the court during trial that one of the jurors is married to an attorney who had accepted a deputy prosecutor's position in the county where the case was being tried. We agree that the trial court abused its discretion in failing to

declare a mistrial, and, accordingly, we reverse Haak's conviction and remand this cause for a new trial.

The facts pertinent to this issue are as follows. Jury selection for Haak's trial began on Monday, September 24, 1979, and was completed in time to allow for the taking of some testimony on that day as well. One of the persons selected for the panel was Marsha Pawloski. She stated on voir dire that her husband, Thomas Pawloski, is an attorney in LaPorte County, and that she is his legal secretary. In addition, she stated that her husband did undertake some criminal defense work, but was not a prosecutor. Mrs. Pawloski asserted that her ability to act as an impartial juror would not be affected by the fact that her husband is an attorney. Another person ultimately selected for the jury in Haak's trial was Roger Bixler. Voir dire examination of Mr. Bixler established that his wife and Mrs. Pawloski are sisters. When defense counsel saw, before voir dire began, that Marsha Pawloski was one of the venire persons from whom the jury would be selected, he challenged her for cause on the basis that her husband is an attorney. The trial court denied this challenge. Defense counsel did not exhaust his peremptory challenges, nor did he exercise a peremptory challenge to remove Mrs. Pawloski or Mr. Bixler from the panel. Likewise, defense counsel did not challenge either Mrs. Pawloski or Mr. Bixler for cause after questioning them during voir dire.

At the beginning of the second day of the trial, defense counsel filed a written motion for a mistrial. This pleading alleged that Marsha Pawloski's husband had been hired as a deputy prosecutor by the prosecutor whose office was prosecuting this case and that Marsha Pawloski was therefore incapable of acting as an impartial juror in this cause. Defendant's motion repeated this allegation with respect to juror Roger Bixler and also challenged his ability to act as an impartial juror. As a result of these allegations, the trial court conducted a hearing outside the presence of the jury.

Thomas Pawloski, Marsha Pawloski's husband, testified at that hearing that he is an attorney in LaPorte County and that on the preceding day, which was the day Haak's trial began, he and his future partner, Craig Braje, had been offered and had accepted positions as deputy prosecutors in LaPorte County. This offer was made by Walter Chapala, the elected prosecutor of LaPorte County. Chapala's office was handling the prosecution of Haak in this case. Chapala offered the position to Thomas Pawloski at approximately 2:00 p. m. on the preceding day, which was after Marsha Pawloski had been selected as a juror in this cause.

Chapala testified that, at the time the offer was made and accepted, he and Thomas Pawloski both knew that Pawloski's wife was serving on Haak's jury. For that reason, Chapala stated, they agreed that Pawloski would not actually begin working for Chapala's office until Haak's trial was concluded, and that they would not inform Marsha Pawloski of this arrangement until after the conclusion of Haak's trial. Thomas Pawloski testified, however, that his wife knew at the time she was selected as a juror that Thomas Pawloski and Braje were seeking deputy prosecutor positions with Chapala's office; she also knew at the time she was selected as a juror that her husband was planning to meet with Chapala on the day Haak's trial began and discuss the employment proposal which Pawloski and Braje had decided to make to Chapala. Thomas Pawloski testified that he did not inform his wife later that day that he had taken the position in Chapala's office. Pawloski further stated that Roger Bixler was not aware that he had been seeking a deputy prosecutor position, nor that he had accepted such a position.

The trial court then called Marsha Pawloski to the witness stand and questioned her outside the presence of the rest of the jurors. Marsha Pawloski testified that she knew her husband and Braje had been discussing the idea of applying for positions in the prosecutor's office. The trial court then informed Mrs. Pawloski that her husband had, in fact, taken a deputy prosecutor's position in Chapala's office and would begin working in that capacity when Haak's trial was concluded. Under questioning from the trial court, Marsha Pawloski stated that she did not think this knowledge would make it difficult for her to render an impartial verdict in this case.

In *Block v. State*, (1885) 100 Ind. 357, this Court faced a similar situation. Unbeknownst to either the defendant or his attorney at the time of jury selection, one of the jurors in the *Block* case was a deputy prosecutor in that county. In response to the defendant's motion for a new trial, the juror filed an affidavit, stating *inter alia* that his holding the position of deputy prosecutor "had no influence whatever upon him in making up the verdict which the jury returned." *Id.* at 358–59. At the time of the *Block* case, there was a statute in effect, R.S. 1881 § 1793, which stated in part:

"The following, and no other, shall be good causes for challenge to any person called as a juror in any criminal trial:

.    .    .    .    .

*Eleventh.* That he is biased, or prejudiced, either for or against the defendant."

We first held in *Block* that objections in the nature of challenges for cause, other than those listed in this statute, may be made to the competency of a person called as a juror. We then explained:

"The 'bias' which disqualifies a juror is of two kinds, 'actual bias' and 'implied bias.' Actual, where a real bias for or against one of the parties exists. Implied, where the relations which the juror sustains to one of the parties are such as to raise a presumption in his favor."

*Id.* at 362. *See United States v. Wood*, (1936) 299 U.S. 123, 134, 57 S.Ct. 177, 180, 81 L.Ed. 78, 82 ("The question here is as to implied bias, a bias attributable in law to the prospective juror regardless of actual partiality."). While acknowledging that the relevant statute did not list specific relationships which would constitute implied bias, we nevertheless recognized in *Block* that "the principles and definitions of

the common law on the subject of 'implied bias' ... have always been expressly or inferentially recognized in this State." *Id.* at 363–64.

We then concluded in *Block v. State* that a deputy prosecutor must be placed in the category of impliedly biased. In reaching this conclusion, we explained:

"The prosecuting attorney stood, in this case, for and as the representative of the State, and was, by analogy and for all practical purposes, the plaintiff in the prosecution. Grayson [the juror], *by his appointment as deputy*, had become and was the employee and subordinate of the prosecuting attorney, as well as the attorney for the State within certain territorial limits. He was, therefore, *impliedly* biased against the appellant, and hence an improper juror."

*Id.* at 364, *quoted in United States v. Wood, supra,* 299 U.S. at 141, 57 S.Ct. at 182, 81 L.Ed. at 85 (emphasis added). Thus, we reversed Block's conviction and awarded him a new trial. Significantly, the Court disregarded the juror's assertion in his affidavit that his position did not affect his performance as a juror. We noted in this regard: "It may be that the objection to Grayson's want of qualification to sit as a juror in this case worked no actual injury to the appellant, but, however that may have been, we can not afford to make the precedent which would be established by our holding that Grayson was a competent juror." *Id.* at 364–65.

In *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743, we were once again faced with a situation very similar to the case now before us. During the selection of the jury in the *Barnes* case, one of the jurors was asked if he had any friends or relatives on the prosecutor's staff. He replied that he did not. However, it was later discovered that the juror was married to a second cousin of a member of the prosecutor's staff. At the time of the *Barnes* case, Ind. Code § 35–1–30–4 (Burns 1971) provided:

"The following shall be good causes for challenge to any person called as a juror in any criminal trial:

.    .    .    .    .

*Eleventh.* That he is biased or prejudiced for or against the defendant.

.    .    .    .    .

*Fourteenth.* That he has a personal interest in the result of the trial."

Thus, this statute is very similar to the statute referred to in *Block v. State, supra.* With slight changes, this statute remains in effect. Ind. Code § 35–1–30–4 (Burns 1979 Repl.).

Because the possibility of juror bias had been raised by appellant Barnes' allegation, and because there had been no opportunity to discover this bias at the time the jury was selected, we remanded the cause to the trial court. Pursuant to this remand, the trial court was instructed to conduct an evidentiary hearing. We explained that the sole purpose of the evidentiary hearing was to determine two questions: (1) whether, during voir dire, the juror was "aware of his relationship to the member of the prosecutor's staff;" and (2) whether, at any time prior to the verdict, the juror became aware of his relationship to the member of the prosecutor's staff. We then stated: "If either of these questions are found to require an affirmative answer, grounds for challenge for cause will have been shown to have existed, and a new trial must be ordered." 263 Ind. at 326, 330 N.E.2d at 747.

Three points must be noticed in analyzing the *Barnes* case. First, the result of the *Barnes* opinion and the result of the evidentiary hearing to be conducted on remand did *not* turn on any finding by this Court or the trial court that the juror in question knowingly gave an untruthful answer on voir dire. We did state that, if the juror had lied, his misconduct was ground for a new trial; however, our instructions to the trial court regarding the evidentiary hearing clearly revealed that the important questions concerned if and when the juror became aware that he was related by marriage to a member of the prosecutor's staff. We held that, if the juror became aware of this relationship before the verdict was reached, appellant Barnes was entitled to a

new trial, even if the juror did *not* know of the relationship—and therefore did not lie—during voir dire. Stated another way, the juror could have given an innocently incorrect answer on voir dire, and yet could have learned the truth prior to the verdict being reached. In that event, his knowledge prior to the verdict of his relationship would have entitled the defendant to a new trial. *Id.* at 326, 330 N.E.2d at 747. *Cf. Barker v. Cole,* (1979) Ind.App., 396 N.E.2d 964, 968.

Second, we were not concerned in *Barnes* with the extent of the juror's relative's involvement in that case. We noted that the juror's wife's second cousin was "involved to a slight degree in the trial of this cause." However, as explained above, the defendant's right to a new trial turned solely on the juror's knowledge of his relationship with the prosecutor's office. If he became aware of that relationship at any time prior to the return of the verdict, he was incompetent to act as a juror, and the defendant was entitled to a new trial.

This result also raises the third crucial point of the *Barnes* case. Our holding in *Barnes* gave the prosecution no opportunity at the subsequent evidentiary hearing to show that the juror was not *actually* biased as a result of any knowledge he obtained prior to the verdict. Thus, just as we explained in *Block v. State,* the problem created in *Barnes* by the juror's relationship was that of implied bias, "where the relations which the juror sustains to one of the parties are such as to raise a presumption of bias in his favor." *Block v. State, supra,* 100 Ind. at 362. Therefore, as the results in *Barnes* and *Block* indicate, when a relationship of this type is shown to exist, and it is also shown that the juror knew of or became aware of this relationship prior to the verdict, then the defendant will have established the existence of grounds for a challenge for cause. If the jury has not yet been selected, the defendant has the right to have the individual removed for cause. If, as in *Block* and *Barnes,* the problem is not discovered until after the trial is over, the defendant is entitled to a new trial.

We believe that *Barnes* and *Block* clearly mandate a conclusion that the trial court in the case before us should have granted appellant Haak's motion for a mistrial. According to the testimony received at the hearing conducted during trial and the transcript of the voir dire of the jury, neither Marsha Pawloski nor defense counsel knew at the time she was selected as a juror that her husband had, in fact, accepted a job as a deputy prosecutor. However, it is abundantly clear that she knew at that time that he and his partner-to-be were seeking positions in the prosecutor's office. She did not reveal this information on voir dire, even when asked if her husband was a prosecutor. Thus, the defendant had no opportunity nor reason to challenge Mrs. Pawloski during voir dire on the basis of the relationship which later came to light. *See Barnes v. State, supra,* 263 Ind. at 326, 330 N.E.2d at 747.

According to the testimony heard outside the presence of the jury, prosecutor Chapala did not actually offer the position to Thomas Pawloski until after Marsha Pawloski was selected as a juror. Appellant did not learn of Thomas Pawloski's position with the prosecutor's office until after the trial had recessed for the day; he filed his motion for a mistrial at the beginning of the court session the following day. On two occasions during the subsequent hearing, the trial court unequivocally stated to Mrs. Pawloski that her husband was going to become a deputy prosecutor as soon as Haak's trial was concluded. Marsha Pawloski was, therefore, a juror attempting to help return an "impartial" verdict in a case being prosecuted by the same office in which her husband had, with her knowledge, agreed to be employed. From the time of the hearing, if not from the inception of these proceedings, she was a juror biased by "the relations [she] sustains to one of the parties." *Block v. State, supra,* 100 Ind. at 362. This bias, as a matter of law, rendered her incapable of acting as a truly impartial juror. *Barnes v. State, supra. Cf. Stevens v. State,* (1976) 265 Ind. 396, 354 N.E.2d 727.

"The end to be obtained is an impartial jury; to secure this end, a man is prohibited from serving on it whose connection with a party is such as to induce a suspicion of partiality. The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice."

*United States v. Burr*, (C.C.Va.1807) 25 Fed. Cas. 49, 50 (opinion of Marshall, C. J.).

We perceive no meaningful distinction between this case, where the juror is the spouse of the deputy prosecutor, and *Block v. State*, where the juror was himself a deputy prosecutor. This difference is merely one of slight degree, and is, realistically, not a difference in kind. Similarly, we find no meaningful distinction between this case, where the juror's husband was to begin working as a deputy prosecutor as soon as the trial concluded, and *Barnes v. State*, where the juror's relative was already a member of the prosecutor's staff. Again, this is only a slight difference in degree. The unavoidable inclinations and motivations which rendered the juror incompetent as a matter of law in *Barnes* were no less real and troublesome here, where the relationship in question had only been verbalized at the time of the trial, but, to a certainty and with the juror's knowledge, was going to exist in fact as soon as the trial concluded. *Cf. Ross v. State*, (1977) 172 Ind.App. 484, 360 N.E.2d 1015.

Moreover, a much closer relationship existed between the juror and one of the parties in this case than existed in *Barnes v. State*. In this case, the juror's husband was directly connected to one of the parties by virtue of his acceptance of the offer of employment. In *Barnes*, the juror's spouse was a second cousin of a member of the prosecutorial staff. Yet, we held in *Barnes* that the juror's knowledge of this relationship, by itself, made him challengeable for cause. The same result must obtain here.

We refuse to distinguish *Barnes v. State* on the basis of the amount of involvement or the fact of involvement of the juror's relative in the case being tried. In *Barnes*, the second cousin of the juror's wife "was involved to a slight degree in the trial" of the case. 263 Ind. at 325, 330 N.E.2d at 746. However, as we explained above, that involvement was not a factor in this Court's determination that the juror—if he knew about the relationship—would have been challengeable for cause. The implied bias which must be avoided is created simply by the juror's relationship to one of the parties and his or her knowledge of that relationship, not by the fact that the juror's relative was "involved"—to whatever degree—in the particular case being tried. *See Block v. State, supra*.

The juror's bias here could not be avoided or dissolved by admonitions from the court or by the juror's assertion that she believed she could judge this case impartially. To expect a juror in this situation to act with an even hand toward both parties, when she knows her spouse is soon to become an advocate for one of those parties, is to ignore human nature. In spite of his or her most sincere efforts to become or remain impartial, the juror in this situation would unquestionably be subjected to extraneous pressures; it is precisely these pressures and the unreasonable risks of these pressures which must be avoided in safeguarding the accused's right to an impartial jury. U.S.Const. amend. VI; Ind.Const. art. 1, § 13. *See People v. Branch*, (1979) 46 N.Y.2d 645, 651, 415 N.Y.S.2d 985, 987, 389 N.E.2d 467, 469 ("[T]he risk of prejudice arising out of the close relationship between the prospective juror and one of the key participants in the trial was so great that recital of an oath of impartiality could not convincingly dispel the taint."). "It may be that the objection to [Marsha Pawloski's] want of qualification to sit as a juror in this case worked no actual injury to the appellant, but, however that may have been, we can not afford to make the precedent which would be established by our holding that [she] was a competent juror." *Block v. State, supra*, 100 Ind. at 364–65. Without

question, one improper juror destroys the integrity of a verdict.

For these reasons, we hold the trial court abused its discretion in refusing to grant Haak's motion for a mistrial. We dispose of this case solely on the basis of Marsha Pawloski's implied bias, and we therefore express no opinion as to whether her sister's husband, Roger Bixler, was qualified to act as a juror in this case. The conviction is reversed, and this cause is remanded with instructions to grant Haak a new trial.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.