Lafayette B. SMITH, Jr.,
Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 2–584A136.

Court of Appeals of Indiana,
Second District.

April 30, 1985.

James A. Heimann, Decatur, for appellant.

1. Ind.Code 35–42–4–3(b) (1982).

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Lafayette B. Smith, Jr. (Smith) appeals his conviction of child molesting,[1] a class C felony, claiming the trial court erred in overruling his motion to dismiss a juror for cause, in permitting the bailiff's husband to serve on the jury panel, in failing to find Smith indigent, and in admitting into evidence exhibits one through seven.

We affirm.

## FACTS

The facts most favorable to the judgment are as follows: On March 22, 1983, an information was filed in the Adams Circuit Court which charged Smith with molesting an eleven-year old boy, A.B. At his initial hearing, the court interviewed Smith concerning his assets, income, and debts, found him to be partially indigent, and ordered him to pay five hundred dollars of his attorney fees to his court appointed counsel. On two separate occasions Smith discharged his court appointed attorney. Smith did not pay any portion of counsel fees earned by either attorney. Finally, despite the court's offer to appoint any lawyer in the county without cost to him, Smith decided to represent himself at trial. The court cautioned him about the seriousness of his charge and advised him to accept the assistance of counsel. Smith agreed to use an attorney as a consultant during trial should he have any questions.

Trial by jury commenced on November 15, 1983. The court questioned potential jurors during voir dire and permitted the State and Smith to ask questions. Jury questionnaires delivered to the State and Smith prior to voir dire indicated no one on the jury panel was related to, or close friends with, any law enforcement officer.

The questionnaires also revealed that juror James Hammond (James) was married to Vickie Hammond (Vickie), the circuit court secretary. During Smith's trial, Vickie also served as bailiff.

At a break after the State's first witness had testified, a juror, Joyce Spitler (Spitler), informed the court that the testimony indicated her brother may have been an investigating police officer on Smith's case. The court conducted a hearing outside the presence of the rest of the jury. Spitler testified her brother, Steve Mosier (Mosier), was a former deputy town marshall. As Mosier was no longer employed in that capacity, Spitler did not respond on the jury questionnaire that she was related to a law enforcement officer. Smith informed the court he had subpoenaed Mosier and expected to call him as a hostile witness. Mosier was an investigating police officer in Smith's case and had interviewed A.B. and other witnesses. He had also been a neighbor of Smith for about one year.

Spitler testified that, even though her brother was a former deputy town marshall and an investigating police officer in the case against Smith, she could be a fair and impartial juror. The trial court overruled Smith's motion to dismiss Spitler for cause. Ultimately, Smith was found guilty and sentenced to eight years imprisonment and fined ten thousand dollars.

## ISSUES

Smith appeals, raising four issues for our review:

1. Whether the trial court erred by denying Smith's challenge of juror Spitler for cause?

2. Whether the trial court erred by permitting the bailiff's husband to serve on the jury panel?

3. Whether the trial court erred by failing to find Smith indigent?

4. Whether the trial court erred by admitting into evidence exhibits one through seven?

## DECISION

ISSUE ONE—Whether the trial court erred by denying Smith's challenge of juror Spitler for cause?

PARTIES' CONTENTIONS—Smith claims Spitler was an incompetent juror because she was impliedly biased in favor of the State for the reason that her brother was a former deputy town marshall who investigated charges against Smith and who testified at trial. The State contends Smith waived any error and, in any event, has failed to demonstrate an abuse of discretion.

CONCLUSION—The trial court did not err by denying Smith's challenge of juror Spitler for cause. Spitler's link with the town marshall's department was too remote to support a presumption of bias in favor of the State.

Our basis for review of a trial court's ruling on a defendant's challenge for cause is abuse of discretion. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964; *Atkinson v. State* (1980), Ind.App., 411 N.E.2d 651. Further, we do not reweigh the evidence but consider only that evidence favorable to the appellee. *Godfrey v. State* (1978), 177 Ind.App. 644, 380 N.E.2d 621, *trans. denied.*

A juror who is biased either for or against a party may be removed for cause from the jury panel. IC 35–37–1–5 (1982). Bias may be actual or implied. Actual bias arises when a factual bias for or against one of the parties is shown to exist. Implied bias is a bias attributable by law to a prospective juror, regardless of actual partiality, due to the existence of a relationship between the juror and one of the parties. *Haak v. State* (1981), 275 Ind. 415, 417 N.E.2d 321; *Block v. State* (1885), 100 Ind. 357.

Our courts have inferred bias on the part of relatives of persons employed by the prosecutor's office, finding the relative incompetent to serve on criminal jury panels. *Haak, supra; Barnes v. State* (1975), 263 Ind. 320, 330 N.E.2d 743. This presumption of bias rests upon the assumption that

a deputy prosecutor, by virtue of his employment, would identify so strongly with the interests of the State he would be unable to fairly adjudge its case against a defendant. As our supreme court reasoned in *Block, supra,* "it is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is fed and clothed." *Block, supra,* at 363. Justice Pivarnik echoed this sentiment by holding in *Haak, supra,* that a relative of a member of the prosecutor's office should be excused for cause from a jury panel to safeguard the accused's right to an impartial jury.

Two cases illuminate the factors considered by our supreme court when measuring whether a relationship will support a presumption of juror bias. In *Woolston v. State* (1983), Ind., 453 N.E.2d 965, a juror's wife was employed by the state police and the juror casually knew three persons employed as officers who were to testify for the State. Also, the juror knew his wife had typed some of the exhibits for defendant's trial. Our supreme court found the trial court erred by failing to dismiss this juror for cause because he was impliedly biased as a result of his close relationship with the state police. Although no reversal was required because the biased juror was dismissed with a peremptory challenge, the juror's relationship with persons *employed* by the police supported a presumption of bias.

Focusing on the source of a law enforcement officer's bias in favor of the State, we examine a second case, *Porter v. State* (1979), 271 Ind. 180, 391 N.E.2d 801. Porter exhausted his peremptory challenges and sought to dismiss from his jury panel for cause a former deputy sheriff who, at the time of trial, was serving as a special volunteer reserve deputy with the sheriff's department. The trial court denied Porter's challenge. Our supreme court held the trial court did not abuse its discretion in overruling Porter's challenge for cause because the former deputy was no longer employed by the department and received

no remuneration for his volunteer service. Further, absent evidence the former deputy had any interest in this case, his service on the jury presented no reversible error.

Likewise, Mosier was no longer employed as a deputy town marshall. Mosier did have an interest in Smith's case stemming from his role in the department's investigation. However, after retirement, Mosier's interest could not operate to automatically disqualify Spitler who had no other connection with law enforcement.

Thus, we do not expand the concept of implied bias to include the relatives of persons who are no longer employed by a law enforcement agency. The link between the town marshall's department and the relative of a former deputy, without an existing employment relationship, is simply too weak to support a presumption of bias. *See Atkinson, supra.*

As to actual bias, the trial court held a hearing allowing the parties to question Spitler. *Record* at 235–38. Spitler testified she had no prior knowledge of this case and that she could be a fair and impartial juror. The trial court heard and overruled Smith's challenge for cause. From these circumstances, we cannot say the trial court's denial of Smith's challenge for cause was an abuse of discretion. *Stevens v. State* (1976), 265 Ind. 396, 354 N.E.2d 727.

Furthermore, Smith has not preserved his allegation of error arising from Spitler's relationship to Mosier as a testifying witness by not attempting to discover her incompetency before the jury was sworn. Smith intended to call Mosier as a witness and had an opportunity during voir dire to determine if any of the potential jurors knew him. Our supreme court has held, "that before a conviction will be reversed due to a juror's incompetency, defendant must show that he made an effort to discover the incompetency before the juror was sworn." *Woolston, supra,* at 968. Smith failed to make any effort to learn if the potential jurors knew Mosier.

ISSUE TWO—Whether the trial court erred by permitting the bailiff's husband to serve on the jury panel?

PARTIES' CONTENTIONS—Smith protests he was denied a fair trial because James served as a jury foreman while his wife served as bailiff. Again, the State counters that Smith has shown no prejudice and has waived this error.

CONCLUSION—The trial court did not err in overruling Smith's motion to correct error even though the jury foreman's wife served as bailiff during his trial.

■ James responded on his jury questionnaire that his wife, Vickie, was employed by the Adams Circuit Court. *Record* at 100–E. Further, before a jury was impaneled, the judge informed Smith, the State, and the potential jurors that Vickie, "who normally is the court secretary", would be filling in for the usual court bailiff who was injured. *Record* at 172. Smith did not seek to dismiss James from jury service with a peremptory challenge nor did he challenge James for cause. "Objections relating to the qualification of a juror must be timely made or they are waived." *Short v. State* (1982), Ind., 443 N.E.2d 298, 306. Smith failed to object, therefore he has waived any error.

■ Smith is incorrect in his assertion that because he was not represented by counsel the trial court had a duty to "specifically reveal this information to the defendant and to disqualify James E. Hammond as a juror." *Appellant's Brief* at 22. Smith freely chose to proceed without the assistance of counsel. "He cannot now be heard to complain that the lack of such assistance worked to his detriment." *Johnson v. State* (1979), 271 Ind. 145, 146, 390 N.E.2d 1005, 1007 (citation omitted); *see also Sidener v. State* (1983), Ind., 446 N.E.2d 965.

ISSUE THREE—Whether the trial court erred by failing to find Smith indigent?

PARTIES' CONTENTIONS—Smith claims the trial court erred in failing to find him indigent and as a result of this error he was denied the right to counsel. The State

responds Smith freely and intelligently waived the assistance of counsel.

■ CONCLUSION—The trial court did not make an incorrect determination of indigency that deprived Smith of his right to counsel. As Smith correctly points out, there is no Indiana precedent allowing or requiring a defendant seeking counsel as an indigent to partially pay for the services of court appointed counsel. *See Bergdorff v. State* (1980), Ind.App., 405 N.E.2d 550. Nevertheless, the trial court's determination that Smith pay five hundred dollars in fees to his court appointed attorney is not reversible error. We reject Smith's contention that the order requiring him to pay five hundred dollars to his attorney deprived him of the right to counsel. Rather, it appears Smith's disagreement with the advice of his court appointed counsel prompted his desire to represent himself. In any event, the amount was never paid.

■ After Smith's indigency hearing, the trial court appointed attorney Blair Brown (Brown) to represent him. Thereafter, Smith became dissatisfied with Brown's services and fired him. At a hearing on withdrawal of counsel, the court offered to appoint any lawyer in the county that Smith desired. *Record* at 134. Smith initially stated he wished to represent himself, but agreed to "try" another court appointed attorney after the court encouraged him to accept the services of counsel. *Record* at 137. The court appointed attorney Jeffrey Agler (Agler) to represent Smith. After talking to Agler, Smith likewise dismissed him. The court discussed the matter with Smith at his second withdrawal of counsel hearing.

"Q. IS IT YOUR DESIRE THAT I APPOINT ANOTHER LAWYER OR DO YOU WANT TO BE YOUR OWN LAWYER OR WHAT WOULD YOU LIKE FOR ME TO DO MR. SMITH?

A. I would like to be my own lawyer.

COURT: YOU WOULD LIKE TO BE YOUR OWN LAWYER. IN OTHER WORDS YOU WANT ME TO ALLOW MR. AGLER TO WITHDRAW AS

YOUR ATTORNEY AND YOU ACT AS YOUR OWN LAWYER?

A. Yes sir

Q. WELL NOW IF YOU WANT TO ACT AS YOUR OWN LAWYER I OF COURSE CANNOT PREVENT THAT BUT I CERTAINLY DON'T RECOMMEND YOUR ACTING AS YOUR OWN LAWYER. DO YOU UNDERSTAND WHAT I AM SAYING TO YOU OR NOT?

A. Yes sir

Q. FIRST OF ALL YOU KNOW AND I THINK I HAVE TOLD YOU THIS I WILL APPOINT AN ATTORNEY TO ACT FOR YOU AT NO CHARGE TO YOU. DO YOU UNDERSTAND THAT?

A. Yes sir

Q. SO IT IS NOT A MATTER OF FINANCES BUT THE COURT WILL APPOINT AN ATTORNEY FOR YOU. CORRECT?

A. Right"

*Record* at 146. The court then thoroughly advised Smith of the possible hazards of proceeding pro se and of the seriousness of the charges against him. *Record* at 146–50. Smith agreed only to permit an attorney to "stand by during the trial" as an adviser. *Record* at 150. It is clear from the record that Smith was afforded every opportunity to avail himself of the assistance of counsel and that he made a knowing, intelligent, and voluntary waiver of counsel. *See Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Nation v. State* (1983), Ind., 445 N.E.2d 565. We find no error.

ISSUE FOUR—Whether the trial court erred by admitting into evidence exhibits one through seven?

PARTIES' CONTENTIONS—Smith contends he was prejudiced by the improper admission of exhibits one through seven. The State answers that Smith has waived any error by failing to object at trial.

■ CONCLUSION—By failing to object to the admission of exhibits one through seven, Smith has not preserved any error for appeal regarding their introduction. *Thomas v. State* (1971), 256 Ind. 309, 268 N.E.2d 609. Exhibits one through seven were photographs of a projector, several video tapes, and a collection of sexually related reading material. Although given the opportunity to do so, Smith made no objection at trial to the admission of these exhibits. Therefore, he has waived any error on appeal. *Rife v. State* (1981), Ind. App., 424 N.E.2d 188.

Judgment affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring

I concur except to the extent that under Issue I, the majority opinion indicates that Indiana does not have a "bias as a matter of law" rule.

I agree that the particular relationship here involved does not require a determination of bias as a matter of law, even though *Barnes v. State* (1975) 263 Ind. 320, 330 N.E.2d 743 would seem to dictate a contrary result. However, I disagree with that portion of the majority opinion which indicates that regardless of the nature and closeness of the relationship between juror and party, or witness, the defendant must always demonstrate prejudice, or the State be given opportunity to demonstrate the lack of prejudice.

At least two observers agree that Indiana has a "bias as a matter of law" rule. They conclude that the rule does not permit an evidentiary hearing which requires a defendant to demonstrate actual bias. *See Smith v. Phillips* (1982) 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78; Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases*, 81 Mich.L.Rev. 1 at 43 (1982). In my view, and notwithstanding some seemingly inconsistent authority, *e.g.*, *Woolston v. State* (1983) Ind., 453 N.E.2d 965, these observers have correctly assessed the current state of our law. *Haak v. State* (1981), 275 Ind. 415, 417 N.E.2d 321; *Barnes v. State, supra; Barker v. Cole* (1979) 3d Dist., Ind.App., 396 N.E.2d 964.