Filed 9/12/14  P. v. Sanchez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENNY ANTHONY SANCHEZ,<br><br>Defendant and Appellant. | B252959<br><br>(Los Angeles County<br>Super. Ct. No. VA126816) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick T. Meyers, Judge.  Affirmed.

Anthony V. Salerno, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted appellant of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and mayhem (§ 203). Appellant contends the court erred in denying his motion to excuse a juror and in denying his *Romero*[2] motion to dismiss a prior strike. We affirm.

## STATEMENT OF FACTS

### 1. *Prosecution Evidence*

Around midnight on September 30, 2012, Michael C. and Christopher H. were walking through the Four Winds apartment complex in Whittier to meet with Michael C.'s friend. They had jumped the wall at the back of the complex. As they were walking through the complex, Christopher H. heard a whistle behind them. He turned around and saw appellant. Appellant was holding a bottle in his right hand. He said to them, "You guys look like little bangers." Christopher H. replied, "Nah, we don't bang, like." Appellant then asked, "Well, where you from and who are you?" Christopher H. replied, "I'm Exile," and said he was from a tagging crew. Appellant said, "All right." It was quiet for a moment, and then appellant struck Christopher H. in the face with the bottle. Christopher H. spun around and was knocked to the ground. Christopher H. heard appellant say, "Shadow. . . . This is my hood."

Christopher H. felt a "huge gap" in his face and he was "bleeding everywhere." He was taken to the hospital where approximately 140 stitches were required to close the wound on his face. Christopher H. suffered nerve damage as a result of the injury.

Prior to this incident, in November 2011, appellant admitted to a police officer that he was a member of the Los Nietos gang and his moniker was Shadow. An officer interviewed appellant on September 30, 2012, at the Four Winds apartment complex, after the attack on Christopher H. Appellant had a laceration on his palm.

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

He had a tattoo on his neck that said "Nietos." Christopher H. identified appellant as his attacker in a six-pack photographic lineup.

## 2. Defense Evidence

Appellant testified in his defense. He lived at the Four Winds apartment complex with his girlfriend and their five-year-old daughter. He was outside smoking on the night in question when he began talking with a neighbor. He asked the neighbor for a drink, and the neighbor gave him a glass of soda. He then heard someone jumping over the wall of the complex. Appellant walked toward the people who had jumped the wall. One of them, a male, asked appellant "where [he] was from." The male said he was from "BYS" and he was "Exile." The male put his hand inside his shirt, and appellant thought he might be reaching for a weapon. Appellant hit the male once with his right hand and ran away.

## PROCEDURAL HISTORY

In addition to charging assault with a deadly weapon (count 1) and mayhem (count 2), the information alleged appellant had inflicted great bodily injury as to count 1 (§ 12022.7, subd. (a)) and had personally used a deadly and dangerous weapon as to count 2 (§ 12022, subd. (b)(1)). It further alleged as to both counts that appellant had suffered a prior strike within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), he had suffered a prior serious felony conviction (§ 667, subd. (a)(1)), and he had served a prison term for a prior conviction (§ 667.5, subd. (b)). The information also contained gang allegations (§ 186.22, subd. (b)(1)(C)).

After finding appellant guilty of both charged offenses, the jury found all allegations to be true. The court sentenced appellant to a total term of 25 years in state prison. Appellant timely appealed.

## DISCUSSION

## 1. Motion to Excuse Juror

Appellant contends the trial court erred in denying his motion to excuse a juror for bias. We disagree. The record does not support his assertion of bias.

3

*a. Relevant Proceedings*

Before opening statements, the court was notified that Juror No. 3 and the prosecutor had encountered one another the night before as they were walking their dogs. Before the court brought in and questioned Juror No. 3, the prosecutor explained there were "lots of dog walkers" in her area and there was a particular dog walker with whom she "always exchange[d] pleasantries," but she "didn't really ever pay that much attention to him." The night before, she thought she recognized the dog walker as a juror, but she was unsure. He was about to exchange pleasantries with her when she asked, "Where were you yesterday?" He replied, "The court. [¶] . . . What number were you?" The prosecutor then told him they had to report the encounter to the court. The prosecutor said they had never exchanged names and they had never talked about their employment. Their exchanges had focused strictly on their dogs, training, and occasionally Juror No. 3's garden. She did not recognize the juror the day before when he was sitting in the jury box.

Defense counsel moved to excuse Juror No. 3 for "bias towards the district attorney," arguing, "She has said that they've had pleasant, cheerful hi and byes in the past with their dogs, and that's a connection." The court wanted to question Juror No. 3 about his interaction with the prosecutor. The following colloquy then ensued:

> "[The Court:] It's my understanding you had an encounter last night with someone in the courtroom. Did you recognize that person last night as anyone other than a fellow dog walker?
>
> "Juror Seat No. 3: I didn't know anything beyond that until that individual said where were you or something like that on Wednesday and asked who I was because I—even then I didn't know who that person was. [¶] . . . . [¶]
>
> "The Court: All right. Thursday is when you had the encounter with the individual; is that correct?
>
> "Juror Seat No. 3: Yes, yes.
>
> "The Court: At any time—well, first of all, was there anything else said between you other than what you relate? I mean, can you think of anything else?

4

"Juror Seat No. 3: No. We didn't talk about anything except for the idea that I walked over. That person basically asked me was—the person was trying to determine if they knew me from in here. Okay. And because all I said was, yeah, I had jury duty on Wednesday, right? And I had it on Tuesday. And that's where all of a sudden we realized that, okay, you're in there and I am in there. I honestly thought she was in here.

"The Court: Referring to [the prosecutor]?

"Juror Seat No. 3: Correct. I thought she was in here because when I sat over there, just so you know, when I sat over there, I couldn't see her because there was a podium that sat right there the whole time. So I never saw her. And in sitting right here, which is the other place I sit, if that was right there, I still can't see her.

"The Court: Okay. But it wasn't until that point that you realized it was someone from the courtroom?

"Juror Seat No. 3: Yeah, that's it.

"The Court: And your initial impression was, was what the role of that person was?

"Juror Seat No. 3: I didn't even understand at that point who she was. I thought she was a juror. I didn't realize she was the D.A.

"The Court: Okay. So this brief exchange took place and you just parted then at that point?

"Juror Seat No. 3: Yeah, ten words and on our way because I see her at—I see her at 30 feet away, right, and you look at the dog. And I have a puppy. So I am looking at my puppy. I am not really looking at her. I have to control this dog because when the two dogs come, but anyway.

"The Court: So has that been the case—

"Juror Seat No. 3: Yep.

"The Court: —When you have been out doing the dog walking you need to keep good control of your dog?

"Juror Seat No. 3: Absolutely. And what I do, you just say hi in passing.

"The Court: And this is a dog walking area where there are a lot of people walking dogs or at least more than five or six?

5

"Juror Seat No. 3:  Yeah, it's in town just people walking around in the evening and in the mornings.  They walk their dogs, and they're going for walks.  I probably see, you know—I don't know.  Yeah, I see a half-dozen people.

"The Court:  All right.  Would the fact that this is a fellow dog walker, is someone in a role in this case, would that present difficulty for you serving as a juror in this case?

"Juror Seat No. 3:  I am going to be honest.  I don't know.  I would say no.

"The Court:  Well, let me ask you this, whether or not you would have any difficulty finding the defendant not guilty if the People, represented by [the prosecutor], failed to prove the guilt of the defendant beyond a reasonable doubt.

"Juror Seat No. 3:  I—You know, all these words always kill me.

"The Court:  Okay.  Then we should be clear, and I don't want you to answer something you don't understand.  The question can be answered yes or no.  [¶]  And the question is would you have any difficulty if the People, represented by [the prosecutor], failed to prove beyond a reasonable doubt that the defendant was guilty of any charge in this case? Would you have any difficulty in finding the defendant not guilty?

"Juror Seat No. 3:  No, I would have no difficulty finding him not guilty.

"The Court:  All right.  All right.  Let me ask you to step outside for a moment."

The court subsequently denied the defense motion to excuse Juror No. 3.

*b. Analysis*

"Section 1089 authorizes the trial court to discharge a juror at any time before or after the final submission of the case to the jury if, upon good cause, the juror is 'found to be unable to perform his or her duty.'  A trial court 'has broad discretion to investigate and remove a juror in the midst of trial where it finds that, for any reason, the juror is no longer able or unqualified to serve.'  [Citation.]  A juror's inability to perform '"must appear in the record as a 'demonstrable reality' and bias may not be presumed." [Citations.]'  [Citation.]  We review the trial court's determination for

6

abuse of discretion and uphold its decision if it is supported by substantial evidence." (*People v. Bennett* (2009) 45 Cal.4th 577, 621.)

A criminal defendant has a constitutional right to trial by an impartial jury. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) An impartial juror has not been improperly influenced and is """"capable and willing to decide the case solely on the evidence before"""" the juror. (*In re Hamilton* (1999) 20 Cal.4th 273, 294.) Juror bias may be actual or implied. Bias may be implied "when the existence of the facts as ascertained, in judgment of law disqualifies the juror." (Code Civ. Proc., § 225, subd. (b)(1)(B).) There are exclusive statutory grounds on which a party may challenge a juror for implied bias, including "[t]he existence of a state of mind in the juror evincing enmity against, or bias towards, either party." (Code Civ. Proc., § 229, subd. (f).)

Here, the trial court's decision that Juror No. 3 was capable of being impartial was supported by sufficient evidence. The juror's bias did not appear in the record as a demonstrable reality. Appellant describes a "community relationship" or "rapport" between the juror and the prosecutor and asserts they had "more than passing contact." But the evidence was that their contacts were, indeed, passing. They did not know each other's names or anything about each other's employment. The prosecutor did not recognize the juror during voir dire as someone she already knew. It was only after voir dire that she recognized him on the street as someone who might have been in the jury panel. Juror No. 3 said he focuses on his dog and controlling the dog when he is out walking and exchanges pleasantries in passing. They had never done more than exchange pleasantries and talk about their dogs, or occasionally, the juror's garden. They did not discuss any matters about the case because the prosecutor cut off the conversation when she determined he was, in fact, a juror. When questioned by the court, the juror said he would not have any difficulty finding appellant "not guilty" if the prosecutor failed to prove her case. He did not indicate his ability to judge the evidence would be affected by having encountered the prosecutor walking her dog. (*People v. Bennett, supra*, 45 Cal.4th at p. 621 ["The court was in the position to

7

observe the juror's demeanor [citation] and the court was persuaded that the juror could perform her duties."].)

Appellant misplaces reliance on *People v. Terry* (1994) 30 Cal.App.4th 97 (*Terry*). That case in inapposite. *Terry* involved a challenge for cause to a deputy district attorney in the jury pool. The attorney worked for the same office that was prosecuting the case. The trial court denied the challenge, finding the prospective juror's answers to voir dire demonstrated he could be impartial. (*Id.* at p. 101.) The appellate court explained: "From a commonsense approach one would think that [the prospective juror] might have some reluctance to vote against a case brought by a fellow attorney from his own office, supervised by his own superior. It would seem that bias should be implied in this situation." (*Ibid.*) It further reasoned that a close reading of the statute (Code Civ. Proc., § 229, setting forth the exclusive grounds for challenges of implied bias) confirmed the commonsense approach. One of the exclusive statutory grounds for implied bias is having had an attorney-client relationship with one of the parties *or* one of the attorneys in the case, within one year previous to the filing of the case. (Code Civ. Proc., § 229, subd. (b); *Terry, supra*, at pp. 101-102.) While the juror in *Terry* had never had an attorney-client relationship with the prosecutor in the case, the court held "the relationship among attorneys of the same firm or office is of a fiduciary and confidential nature essentially the same as that of attorney-client," and thus attorneys from the same office may also be challenged for implied bias. (*Terry*, at p. 102.) Adopting an articulation of the principle from a sister court, the court also noted the relationship made it "'almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is fed and clothed.'" (*Id.* at p. 103, quoting *Block v. The State* (1885) 100 Ind. 357, 363.) The court observed federal law was in harmony with its conclusion; Justice O'Connor explained in one concurring opinion that "'[w]hile each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the

8

prosecuting agency . . . .'" (*Id.* at pp. 102-103, quoting *Smith v. Phillips* (1982) 455 U.S. 209, 222 (conc. opn. of O'Connor, J.).)

This case is unlike *Terry*. There was no showing Juror No. 3 was in a confidential or fiduciary relationship with the prosecutor. The relationship of fellow dog walker did not accord the same power and weight of interest an employer would have over an employee. The facts of this case simply do not compare to *Terry*. The trial court did not err in denying the motion to excuse the juror.

## 2. Romero *Motion*

Appellant made an oral *Romero* motion to dismiss the prior strike finding against him, and the court denied the motion. He contends the court abused its discretion. We disagree.

Under section 1385, subdivision (a), a judge may, in furtherance of justice, order an action to be dismissed. Pursuant to the statute, a trial court may also vacate a finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony. (*Romero, supra*, 13 Cal.4th at p. 504.) We review a trial court's failure to dismiss or strike a prior conviction allegation or finding under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) The defendant has the burden of showing the sentencing decision was so irrational or arbitrary that no reasonable person could agree with it. (*Id.* at pp. 376-377.) In the absence of such a showing, we presume the trial court acted to achieve legitimate sentencing objectives and will not set aside its discretionary determination on review. (*Ibid.*) When the record demonstrates the trial court considered all the relevant factors and reached an impartial decision, we should affirm the trial court's ruling, even if we might have reached a different decision in the first instance. (*Id.* at p. 378.)

When entertaining a *Romero* motion, the court should balance the defendant's constitutional rights but also society's legitimate interest in the fair prosecution of properly charged crimes. (*Romero, supra*, 13 Cal.4th at p. 530.) The court should consider whether the nature and circumstances of the defendant's present felonies and

9

prior serious and/or violent felony convictions, and the particulars of the defendant's background, character, and prospects, place the defendant outside the spirit of the Three Strikes law, in whole or in part. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

In this case, appellant has not shown the court's sentencing decision was irrational or arbitrary in light of the relevant factors. The current offense was violent and involved great bodily injury to the victim, who was 17 years old at the time of the offense. Appellant was 28 years old at the time of this case and had accumulated three felony convictions in three separate cases—one for second degree robbery in 2004, one for vehicle theft in 2005, and one for evading a police officer in 2010. He also had four misdemeanor convictions from 2004 to 2010 for driving with a suspended license and being under the influence of a controlled substance. He was on probation at the time he committed the current offense. (*People v. Strong* (2001) 87 Cal.App.4th 328, 338-340 [proper to consider the defendant's past criminal record; the defendant's criminal career need not "consist entirely or principally of violent or serious felonies to bring a defendant within the spirit of the Three Strikes law"]; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475 [considering misdemeanor and probation or parole violations as well as felonies].) Appellant argues his prior strike—the 2004 second degree robbery conviction—was remote in time. But the length of time between the prior strike and the current offense is far less significant when appellant did not refrain from criminal activity during that time. (*People v. Williams, supra*, 17 Cal.4th at p. 163.) Appellant also argues his prospects were good in that he had a stable living situation with his family for two years, was employed at greater than minimum wage as a janitor, and did not drink or use drugs. This information was brought to the court's attention at the sentencing hearing and in the probation report, and we presume the court weighed these factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Given appellant's prior record and the circumstances of the present offense, however, we cannot say the court's ultimate

sentencing decision was so irrational or arbitrary that no reasonable person could agree with it. Accordingly, the court did not err.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.