Keith McCANTS, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9606–CR–453.

Supreme Court of Indiana.

Nov. 3, 1997.

Kurt A. Young, Nashville, for Defendant–Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

SELBY, Justice.

Defendant Keith R. McCants was convicted on two counts of attempted murder, one count of criminal confinement, one count of resisting law enforcement, and one count of carrying a handgun without a license. The jury also found him to be a habitual offender. The trial court ordered defendant to serve the following sentences concurrently: thirty (30) years on count one, attempted murder; sixty (60) years on count two, attempted murder, enhanced by the habitual offender finding; and one (1) year on count six, resisting law enforcement. The trial court ordered the defendant to serve the following sentences consecutively: twenty (20) years on count four, criminal confinement, to be served consecutively after count two, attempted murder; and eight (8) years on count eight, carrying a handgun without a license, to be served consecutively after count four, criminal confinement. Defendant raises the following issues in this direct appeal.

1. Did the trial court err when it overruled defendant's objection to the State's use of a peremptory challenge excusing the only prospective African–American juror?

2. Did the trial court err when it denied defendant's request for a mistrial upon discovery that one of the State's witnesses and a juror worked at the same university?

3. Did the trial court erroneously enter judgment as resisting law enforcement, a class D felony, when the jury found defendant guilty of resisting law enforcement, a class A misdemeanor, a lesser included offense of the crime charged?

4. Did the trial court err when it entered judgment of conviction for carrying a handgun without a license as a class C felony?

5. Did the trial court err in imposing consecutive sentences for criminal confinement and carrying a handgun without a license?

## FACTS

In the early morning of August 12, 1995, Larry Hardy and Rebecca Woodson arrived at a Church's Chicken. The couple encountered "K.J." Howard and defendant outside the restaurant and an argument ensued. At one point during the argument, Howard struck Hardy. Hardy backed away and headed toward a phone booth nearby. In the meantime, defendant was arguing with Woodson and threatening to shoot her and Hardy. Defendant struck and injured Woodson. Woodson got into her car, picked up Hardy at the phone booth, and fled. Defendant drove after them while Howard fired shots out the passenger window at Woodson's car.

An off-duty police officer saw a flash from the passenger side of the pursuing car. The officer allowed passage to the cars, which were heading the wrong way on a one way street, and then turned on his emergency lights and followed them. The pursuing car fled. Another police officer, Officer Greer, who drove a marked police car, responded to the broadcast of the shooting. He followed the fleeing car, but fell behind. Eventually Officer Greer found the car which was parked diagonally across a sidewalk and faced the wrong direction. Either one or both car doors were open. Shotgun shells and live rounds for a handgun were found inside the car. A shotgun was discovered in the vicinity of the parked car.

In the meantime, defendant and Howard fled the car and broke into a house nearby. Defendant and Howard encountered Catherine Welch, the homeowner, at the top of the stairs and forced her to return to her bedroom. Defendant held a gun to Welch while in the bedroom. After learning that the house had a basement, defendant and Howard forced Welch to her basement. Defendant threatened that, if she tried to escape or make a noise, he would shoot her.

At one point, defendant relinquished the gun to Howard. Howard ordered Welch to squat on the ground. He instructed Welch to take off all of her clothes and pretend that she was the defendant's quarreling lover if the police should happen to find defendant first. Howard and Welch were hiding in a different part of the basement than defendant.

The K–9 police unit tracked the scent from the abandoned car to a house one half block

from the parked car. Two officers noticed freshly broken glass inside the door on the floor. One officer knocked on the door and identified himself, but there was no response. The officers entered and found two young children sleeping on the second floor. The officers then searched the basement and found defendant hiding behind a water heater. When the police found defendant, Howard pushed Welch from their hiding spot. Welch told the police that she was the defendant's girlfriend and they were fighting. When Welch had positioned herself behind the police officer, she recanted her story. She then directed the police to Howard. The police arrested defendant and Howard immediately. A handgun was found on the basement floor.

## DISCUSSION

### I. Peremptory Challenge

Defendant claims that the trial court erred when it overruled his objection to the State's peremptory challenge to the only African–American prospective juror.

■ This court will not set aside a trial court's finding regarding discriminatory intent to excuse a juror unless clearly erroneous. *Kent v. State*, 675 N.E.2d 332, 340 (Ind.1996). To establish a prima facie case of racial discrimination in the process of jury selection, a defendant must show that (1) the excused juror is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of the case raise an inference that the exclusion was based on race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once the prima facie case is established, the burden shifts to the State to provide a race-neutral explanation for challenging such juror. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. If the explanation, on its face, is based on something other than race, the explanation will be deemed race neutral. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991). The trial court

must then decide whether the defendant has shown that the state committed purposeful race discrimination in the process of jury selection. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24. The trial court's finding is accorded great deference. *Id.* at 98, 106 S.Ct. at 1723–24. Thus, the trial court's finding will be set aside by this Court only when found to be clearly erroneous. *Kent*, 675 N.E.2d at 340.

■ In the case at bar, the State exercised one peremptory challenge removing the only prospective African–American juror. Defendant objected to the State's challenge and argued that, of the eighteen (18) prospective jurors, the State challenged the only prospective African–American juror that could have served on the petit jury.[1] These facts and circumstances do raise an inference that the juror was excluded on the basis of race. Therefore, the burden shifted to the State to offer a race-neutral explanation for peremptorily challenging this prospective juror. The State explained that the juror had previously served on a criminal panel and voted to acquit and that the juror spends her spare time watching soap operas. These explanations are facially race-neutral as required by *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866–67. Thus, the trial court was required to determine whether the defendant proved that the State committed purposeful discrimination in the process of jury selection. The trial court accepted the State's explanations as race-neutral and overruled defendant's objection. We conclude that the trial court's finding is not clearly erroneous.

### II. Motion for Mistrial

Defendant contends that the trial court abused its discretion in denying defendant's motion for mistrial based on defendant's claim that one of the State's witnesses worked at the same university as a juror.

■ Juror bias may be actual or implied, based upon a finding that a certain relationship exists. *Threats v. State*, 582 N.E.2d 396, 398 (Ind.Ct.App.1991). The trial court must weigh the nature and extent of the

---

1. There were two other prospective African–American jurors, but they were among the last members of the jury venire and had little chance of serving on the jury.

relationship versus the ability of the juror to remain impartial. *Id.*

In *Threats,* the juror disclosed to the trial court that he knew defendant and his wife, who was a witness. The juror indicated that the relationship with defendant's wife was casual and he assured the trial court that he could remain impartial. The juror was subsequently dismissed for failing to disclose that he knew defendant's wife at the earliest possible time. However, the appellate court suggested that the juror could have remained impaneled under the circumstances if the juror had disclosed this information earlier. *Threats,* 582 N.E.2d at 399.

■ In a similar case, this Court upheld a trial court's decision to deny defendant's motion for mistrial after the trial court learned that a juror and a State's witness were employed at the same location, had casual contact because of their employment, but had no discussions concerning the trial. *Creek v. State,* 523 N.E.2d 425, 427 (Ind.1988). These two cases establish that timely disclosure of a juror's casual relationship with a witness or a party, coupled with an assertion that the juror will remain impartial, adequately protect a defendant's right to an impartial jury.

Defendant cites to *Haak v. State,* 275 Ind. 415, 417 N.E.2d 321 (1981) and *Mooberry v. State,* 157 Ind.App. 354, 300 N.E.2d 125 (1973) as dispositive. In *Haak,* the trial court discovered that a jury member's spouse had accepted a position as a deputy prosecutor in the same county where the case was being tried. *Haak,* 275 Ind. at 424–25, 417 N.E.2d at 325. In *Mooberry,* the trial court declared a mistrial after learning that two jury members were acquainted with the rape victim, who was found in a subsequent trial to have been raped by the defendant. 157 Ind.App. at 358, 300 N.E.2d at 128.

■ *Haak* and *Mooberry* are clearly distinguishable from the case at bar in that defendant presented no affirmative evidence that the State's witness and the jury member actually knew each other. Defendant requested that the trial court declare a mistrial merely because the State's witness and the juror worked at the same university. The trial court found that any relationship was "mere speculation" by defendant and denied the motion. Under the circumstances, the trial court did not have a duty to conduct a hearing to inquire into the nature and extent of an alleged relationship between the State's witness and the juror. The trial court's decision is fully consistent with *Creek,* which permits a juror to remain impaneled even though that juror is employed by the same company and had casual contact with a party or witness. The motion for mistrial was properly denied.

### III. Sentencing

Defendant claims sentencing error in several respects. First, defendant points out that the trial court incorrectly entered judgment as resisting law enforcement, a class D felony, when the jury found defendant guilty of resisting law enforcement, a class A misdemeanor. Defendant correctly identified this scrivener's error without objection from the State. The trial court imposed a sentence of one year for this conviction. This one-year sentence is consistent with both a class A misdemeanor conviction, Indiana Code Section 35–50–3–2 (1993) (a fixed term of not more than one year), and a class D felony conviction, Indiana Code Section 35–50–2–7 (1993) (a sentencing range of 6 months to 3 years). Thus, no alteration of defendant's sentence is necessary, although the scrivener's error should be corrected.

The second sentencing issue raised by defendant is whether the trial court erred in entering judgment of conviction for a class C felony on the offense of carrying a handgun without a license. Indiana law provides that the crime of carrying a handgun without a license is ordinarily a class A misdemeanor. Ind.Code § 35–47–2–23(c) (1993 and Supp. 1996). The crime, however, is enhanced to a class C felony if the defendant has a prior felony conviction. Ind.Code § 35–47–2–23(c)(2)(B) (Supp.1996).

The trial court properly conducted an enhancement phase after defendant was found guilty of the underlying crimes, including carrying a handgun without a license. Defendant was also charged with being a habitual offender; thus, the focus of this enhancement phase was to permit the jury to

determine whether there were prior unrelated felony convictions to support the habitual offender enhancement as well as the enhancement of the handgun conviction. At this hearing, the State presented evidence that defendant had a 1990 conviction for possessing cocaine and a 1992 conviction for robbery. The jury returned a verdict announcing its determination that both convictions were proven. The trial court then enhanced defendant's handgun conviction to a class C felony and later enhanced defendant's sentence for one of the other convictions by 30 years due to his habitual offender status.

Defendant relies on *Johnson v. State*, 654 N.E.2d 20, 22–23 (Ind.Ct.App.1995), for the proposition that the jury must find defendant guilty of the class C felony instead of the class A misdemeanor to support an enhanced sentence. Defendant has misread *Johnson*. In *Johnson*, the Court of Appeals emphasized that the trial court, during both phases of the bifurcated trial, made no mention of the class of the felony by which defendant would be convicted. *Id.* at 22–23. Instead, the jury made a general finding that the defendant was guilty of the underlying crime without reference to the criminal classification. *Id.* at 23 n. 2. After the jury found the defendant to be a habitual offender, the trial court enhanced the sentence for the underlying crime from a class D to a class C felony. *Id.* at 23. The Court of Appeals concluded that "[t]he proof necessary to enhance the predicate offense was obviously established by virtue of the habitual offender finding." *Id.* at 23.

◼ Similarly, in this case the habitual offender determination and the charge enhancement on the handgun offense were conducted in the same trial phase. The jury's finding of two prior unrelated felony convictions met the habitual offender requirement, and the same finding supported the enhancement of the handgun conviction to a class C felony.

The final sentencing error claimed by defendant is that the trial court failed to articulate any particularized aggravating factors to support consecutive sentences for criminal confinement and carrying a handgun without a license.

The trial court articulated the following aggravating circumstances:

> The Court finds these aggravating factors. That Mr. McCants' prior criminal history shows that he's in need of corrective treatment in a penal setting; he has three convictions for violent crimes; and four convictions for property crimes. The Court finds that the nature of the offense in count four [criminal confinement] is such that less than an enhanced sentence on that count would depreciate the seriousness of the offense. Mr. McCants confronted a young mother in her own home early in the morning while she was alone with her two children. And he was carrying a handgun and took her downstairs to the basement and terrorized her. The Court finds no mitigating factors.

(R. at 853, 854.)

◼ The trial court may determine in its discretion whether aggravating circumstances support an enhanced sentence. *Isaacs v. State*, 673 N.E.2d 757, 765 (Ind. 1996). The court may also cite the same aggravating circumstances to support both an enhanced and consecutive sentence. *Id.* The facts articulated by the judge must support the listed aggravating circumstances. *Gregory–Bey v. State*, 669 N.E.2d 154, 158 (Ind.1996).

◼ The statute lists as an aggravating circumstance that "the imposition of a reduced sentence ... would depreciate the seriousness of the crime." Ind.Code § 35–38–1–7.1(b)(4) (1993 and Supp.1996). However, this factor may not be used as the basis for sentence enhancement. *Gregory–Bey*, 669 N.E.2d at 159. The trial judge may use this aggravating circumstance only when determining whether to impose a sentence term less than the presumptive sentence. *Id.*

◼ The trial court properly cited the two aggravating circumstances of prior criminal history and the need for corrective treatment in a penal institution to support both enhanced and consecutive sentencing. *See* Ind.Code § 35–38–1–7.1 (1993 and Supp. 1996).

## CONCLUSION

Defendant's conviction and sentence are affirmed. We remand for correction of the scrivener's error.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.