Michael GRAHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9911–CR–00793.

Court of Appeals of Indiana.

Dec. 4, 2000.

Rehearing Denied Jan. 25, 2001.

---

Hilary Bowe Oakes, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Appellant, Michael Graham ("Graham"), was convicted of two counts of dealing cocaine,[1] class B felonies, and two counts of possessing cocaine,[2] class D felonies. Graham was also adjudged an habitual offender.[3] Graham challenges the trial court's determination that he did not make a prima facie showing of racial discrimination when the State exercised its peremptory challenges during jury selection. We find Graham did in fact make a prima facie showing of racial discrimination by the State in exercising its peremptory challenges, and that the trial judge should have allowed the State to present race-neutral reasons for making its strikes. Since the record contained no race-neutral reasons for the State's strikes and it would be impossible at this time to determine if any existed, we reverse and remand for a new trial.

### Facts and Procedural History

On August 24, 1998, the trial court conducted *voir dire* of potential jurors for Graham's trial. The potential jurors included two African Americans and one Filipino. Record at 247. The other potential jurors were Caucasian; Graham is African American. *Id.* The first potential African American juror stated, in response to a question from the State about any concerns she might have, that she "wouldn't be fair to the defendant." Supp. Record at 8. She also stated that she "would be worried about making the right decision." *Id.* The second potential African American juror stated that someone had stolen his car keys, wallet, and expensive leather coat and that he "called the police and the Sheriff came." Supp. Record at 14. The State asked the potential juror what the resolution of the incident was and he said that no one was ever charged and "it was my word against his." *Id.* The State dismissed the two African Americans through peremptory challenges. *Id.*

Graham moved to strike the jury panel after completion of the first round of questioning, but the trial judge preserved Graham's objection and addressed it after the jury was sworn in and sent to the jury room. *Id.* At that time, the trial judge found Graham did not make a prima facie showing of racial discrimination on the part of the State in its peremptory challenges, and therefore did not require the State to set forth race-neutral reasons for its strikes against the two potential jurors. Record at 247–48. The trial judge, however, supplanted his own race-neutral reasons for the strikes. The trial judge said, "[the first potential juror] indicated that she would have difficulty reaching a decision and [the second potential juror] I believe testified that he had been convicted of a crime." Record at 248.

The trial was held as scheduled, and the jury found Graham guilty of two counts of dealing cocaine, class B felonies, and two counts of possessing cocaine, class D felonies. Graham also pleaded guilty to an habitual offender sentence enhancement. The trial judge merged the two counts of possession of cocaine with the two counts of dealing cocaine. Graham was sentenced to serve fifty years in prison: twenty years for each count of dealing cocaine, to be

---

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

3. Ind.Code § 35–50–2–8.

served concurrently, and thirty years for the habitual offender sentence enhancement. Record at 203–04.[4]

### Discussion and Decision

■ Graham contends that the trial judge improperly allowed racially discriminatory peremptory challenges of the only two African American prospective jurors, which is constitutionally impermissible. *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997), *reh'g denied,* (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). To prevail, a defendant must first make a prima facie showing of racial discrimination in the State's use of a peremptory challenge. Specifically, a defendant must show that 1) the State's peremptory challenge removed members of a cognizable racial group from the jury pool; and 2) the facts and circumstances raise an inference that the State used the peremptory challenge to prevent certain potential jury members from becoming part of the jury based on their race. *Patterson v. State,* 729 N.E.2d 1035, 1039 (Ind.Ct.App.2000) (citing *Williams v. State,* 700 N.E.2d 784, 786 (Ind.1998)).

■ Second, after a defendant makes a prima facie showing, the State must present a race-neutral reason for the peremptory challenge. *Id.* (citing *McCants v. State,* 686 N.E.2d 1281, 1284 (Ind. 1997)).[5] If the State's reason for the challenge is facially based on something other than race, it is deemed race-neutral. *Id.* Additionally, the State's reason for the challenge need not rise to the level of justifying a challenge for cause, or be particularly persuasive; it must only be related to the case and constitute a valid race-neutral reason for striking the juror in question. *Id.* (citing *Brown v. State,* 684 N.E.2d 529, 537 (Ind.Ct.App.1997), *trans.*

*denied, cert. denied,* 523 U.S. 1027, 118 S.Ct. 1316, 140 L.Ed.2d 479 (1998)).

■ If both parties meet their burdens, the trial court must then decide whether or not the opponent to the peremptory challenge "has shown that the [S]tate committed purposeful race discrimination in the process of jury selection." *McCants,* 686 N.E.2d at 1284 (citing *Batson,* 476 U.S. at 98, 106 S.Ct. 1712). "The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact which is accorded great deference on appeal, because the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." *Wright,* 690 N.E.2d at 1104–05 (citing *Hernandez v. New York,* 500 U.S. 352, 364–65, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *United States v. Hunter,* 86 F.3d 679, 683 (7th Cir.1996), *cert. denied,* 519 U.S. 985, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996); *Williams v. State,* 669 N.E.2d 1372, 1379 (Ind.1996), *cert. denied,* 520 U.S. 1232, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997)). The trial court decision regarding discrimination will be set aside only if it is found to be clearly erroneous. *McCants,* 686 N.E.2d at 1284 (citing *Kent v. State,* 675 N.E.2d 332, 340 (Ind.1996)).

■ Here, Graham made a timely objection to the State's peremptory challenges of the only two African American prospective jurors. The trial judge found, however, that Graham did not show racial discrimination by the State in its peremptory challenges. The trial judge also found that even if Graham had made his prima facie showing, the State had race-neutral reasons for striking the two jurors. Record at 247–48. The trial judge, however, misconstrued the testimony of the first potential African American juror. The tri-

---

4. Graham also contends that the trial court's imposition of a fifty-year sentence is manifestly unreasonable and unconstitutional. We need not address this issue because our decision regarding the State's peremptory challenges is dispositive.

5. The State need not wait until the defendant has made a prima facie showing but may proffer its race neutral reasons at the time of the challenge. *See, Koo v. State,* 640 N.E.2d 95 (Ind.Ct.App.1994).

al judge stated that the first potential African American juror indicated that she would have trouble making a decision. Record at 248. However, the potential juror actually stated that she was concerned about being fair to the defendant, not just that she was generally indecisive. Supp. Record at 8. Next, the trial judge misspoke in recalling the *voir dire* testimony of the second African American potential juror. The trial judge stated that the second African American potential juror had been convicted of a crime. Record at 248. According to the second African American potential juror's testimony, though, he had been a victim of a crime, not convicted of a crime. Supp. Record at 13–14.

We find that the trial judge erred and that Graham did in fact make a prima facie showing of the State's racial discrimination in the use of its peremptory challenges. In his objection to the trial judge, Graham pointed to the fact only two African American potential jurors had been dismissed by the State and there was only one other person on the panel who was not Caucasian. Record at 247. Graham clearly met the first part of his burden by showing that the State used peremptory challenges to remove members of a cognizable racial group from the jury pool.

Graham also met the second part of his burden because the facts and circumstances raise an inference the State used its peremptory challenges to prevent the potential jurors from becoming part of the jury because of their race. Our Supreme Court has held that when there is only one African American potential juror who is struck by the State and the defendant is African American, such facts and circumstances alone raise the inference that the potential juror was struck by the State in an effort to prevent the potential juror from becoming part of the jury panel because of his or her race. *McCants*, 686 N.E.2d at 1284. The only difference between the *McCants* facts and our case is that there were two African American po-

tential jurors struck by the State in our case, rather than one. Nevertheless, the two African American potential jurors struck by the State were the *only* two African American potential jurors and Graham is African American. The facts and circumstances of this case, in light of the *McCants* case, necessarily give rise to the inference that the State exercised its peremptory challenges against the two African American potential jurors in an effort to prevent them from becoming part of the jury panel because of their race. Because Graham met his burden, the trial court was clearly erroneous when it concluded that Graham had not established a prima facie showing of racial discrimination. Since Graham met his burden, the burden should have shifted to the State to set forth race-neutral reasons for the peremptory challenges.

 Instead, the trial court found Graham did not make a prima facie showing of racial discrimination on the part of the State, and therefore did not require the State to present race-neutral reasons for the strikes. The trial court offered its own race-neutral reasons for the State's peremptory challenges of the two African American potential jurors. The trial court found that had it been necessary for the State to give race-neutral reasons, the reasons would have been that the first potential juror was unsure about making a decision and that the second potential juror had been convicted of a crime. The trial court's recollection of the *voir dire* testimony of the potential jurors, however, was incorrect. Thus, the trial judge not only erred in finding that Graham had not made a prima facie showing of racial discrimination, he also erred in speculating what the State's race-neutral reasons would have been. Furthermore, because Graham's challenge to the *voir dire* of the potential jurors was not addressed at the time it was raised, which was when the testimony of the potential jurors was still fresh in the minds of the attorneys and judge, but was put on hold until after the

jury had been sworn in and dismissed to the jury room, the trial judge's recollection of the responses of the two jurors was incorrect.

■ The first African American potential juror testified that she was worried about making the right decision and was concerned that she would not be fair to the defendant. Supp. Record at 8–9. However, this potential juror was not the only potential juror with a concern over being unable to make a secure decision. In fact, during *voir dire*, the State mentioned it had never seen so many potential jurors mark on their questionnaires ˙that they were concerned about being fair and impartial. Supp. Record at 8. Additionally, during Graham's *voir dire* of the potential jurors, he restated the concern "several of you marked no on your ability to be impartial here on a criminal case." Supp. Record at 17. And even more telling of the widespread insecurity of the potential jurors is that the trial judge interrupted Graham's *voir dire* of the potential jurors to address the broad concern among the potential jurors of fairness. In addressing the group of potential jurors, he stated, "I understand that you're concerned about making the wrong decision." Supp. Record at 20. Then, after distinguishing one potential juror's specific concern, he said, "all the rest of you is [saying], 'I've never done this before[,] I am not sure what to expect and I'm afraid that I am not going to do the right thing.'" Supp. Record at 22. At the end of the trial judges' general commentary and specific questions to some of the potential jurors, but before turning the *voir dire* back to Graham, the trial judge stated, "I am sorry to interrupt but we had so many in the same boat that I wanted to try and cover some of that." Supp. Record at 23. Because of the widespread concern among all of the potential jurors regarding fairness and impartiality, we do not find that the State had a race-neutral reason for striking the first African American potential juror.

■ The second African American potential juror testified that he had been an alleged victim of a crime in the past that involved the theft of his personal belongings. Supp. Record at 13–14. The police, however, never charged anyone with this alleged theft. The juror was not questioned as to his feelings about this incident. Perhaps it could be argued that this potential juror might have harbored ill feelings towards the police for failing to prosecute his case. However, we think it is equally likely that this potential juror might side with the prosecutor out of bitterness towards persons who get away with crime. Because this second, equally possible speculation of how the potential juror would decide the case benefits the State, we do not find the State had a race-neutral reason for striking the second potential African–American juror either.

The trial court first erred in finding that Graham did not establish a prima facie showing of racial discrimination and then erred in speculating what the State would have presented as race-neutral reasons by incorrectly recalling the *voir dire* testimony of the potential jurors. These errors could have been avoided if Graham's challenge to the *voir dire* had been addressed at the time it was raised. The testimony of the potential jurors and the demeanor of the attorneys would no doubt be fresh in the mind of the trial judge at the time of the challenge. In this case, if the challenge had been addressed at the time it was ˙made, memories would have been sharper and the trial judge might have realized that Graham did in fact make a prima facie showing of racial discrimination and then allowed the State, and not himself, to set forth any possible race-neutral reasons for the strikes. This immediate and more thorough process could have prevented an appeal on this issue or could have preserved for the record any legitimate race-neutral reasons for these strikes. Because we are unable to find any race-neutral reasons for these strikes in the record and it would be impossible at

this time to determine if any existed, we reverse and remand for a new trial.

SULLIVAN and BAILEY, JJ., concur.