**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**WILLIAM W. GOODEN**
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM JAMES HALL, | ) |
| Appellant-Defendant, | ) |
| vs. | ) No. 82A04-1107-CR-330 |
| STATE OF INDIANA, | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable David Kiely, Special Judge
Cause No. 82C01-0906-FB-708

**March 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

William James Hall ("Hall") was convicted in Vanderburgh Circuit Court of Class B felony attempted rape, Class D felony residential entry, and Class D felony criminal confinement. Hall appeals and presents the following two issues for our review:

I.      Whether the trial court erred in denying Hall's Batson challenge to the State's use of a peremptory strike to remove an African-American juror; and

II.     Whether the evidence was sufficient to prove that Hall committed the crime of attempted rape.

We affirm.

**Facts and Procedural History**

Hall and A.H. were in a relationship from 2001 until 2004. This relationship produced a son, B.H., but the couple never married. Hall and A.H. had joint legal custody of B.H., but A.H. was the physical custodian. On June 24, 2009, Hall met A.H. and B.H. at a restaurant in Vanderburgh County. There, Hall and A.H. discussed Hall's plans to enlist in the Army and the impact that would have on Hall's child support obligation.

Later that evening, Hall arrived unexpectedly at A.H.'s house and asked if he could spend some extra time with B.H. A.H. agreed, and Hall visited his son at A.H.'s house until approximately nine o'clock that night. After Hall left, A.H. put B.H. to bed and went to bed herself at approximately ten o'clock.

Sometime that night, Hall returned to A.H.'s house, entered through a window in a back room, and came into A.H.'s bedroom. A.H. awoke to find Hall on top of her and repeatedly asking where her phone was. Hall eventually found the phone and threw it on

2

the floor. Hall held A.H.'s arm and told her to take off her "f**king clothes." Tr. p. 171. A.H. then screamed for her son, which prompted Hall to grab A.H.'s throat and put his hands over her mouth. A.H. resisted Hall by hitting and kicking him, but Hall continued to order her to remove her clothes. He also told A.H. "if he was . . . going to go to jail he was going to go for something a hell [of] a lot better than child support." Tr. p. 172. At some point during the attack, Hall dropped unopened packages of condoms that he had brought with him on the floor next to A.H.'s bed. Eventually, Hall stopped attacking A.H. and ran toward the back room where he had entered. A.H. ran to B.H.'s room and held her son. As she did so, Hall walked by the room and told A.H., "this isn't over." Tr. p. 173. A.H. then called the police and waited in her son's room until they arrived.

On June 25, 2009, the State charged Hall with Class B felony burglary, Class B felony attempted rape, and Class D felony criminal confinement. A jury trial commenced on September 9, 2010. During jury selection, the prosecuting attorney used one of its peremptory challenges to strike potential juror J.H., who was the only African-American on the jury panel.[1] Hall objected to the prosecution's peremptory challenge based on Batson v. Kentucky, 476 U.S. 79 (1986). The prosecuting attorney then responded by proffering a race-neutral reason for exercising its peremptory strike: "[J.H.] said he would have a problem judging people, [and] he has a recent criminal record that may be pending and I could [have] made an objection for cause but instead took him off peremptory[.]"[2]

---

[1] Hall asserted at trial that J.H. was the only African-American on the panel, and neither the State nor the prosecuting attorney disputed this assertion.

[2] The prosecuting attorney also noted that "the defendant is not African American." Tr. p. 69. This is irrelevant to a Batson challenge. "[A] party may raise a Batson claim regardless of his or her race."

3

Tr. p. 69.  The trial court noted that the record did indicate that J.H. had a misdemeanor charge pending against him and therefore overruled Hall's Batson objection.

The jury ultimately found Hall guilty as charged of Class B felony attempted rape and Class D felony criminal confinement, but found him guilty of the lesser included offense of Class D felony residential entry instead of Class B felony burglary.  On June 8, 2011, the trial court sentenced Hall to concurrent terms of eight years on the attempted rape conviction and eighteen months on the residential entry conviction.  The trial court "merged" the criminal confinement conviction with the attempted rape conviction and did not impose sentence on that count.  The trial court also suspended four years of Hall's aggregate eight-year sentence to home detention with GPS monitoring.  Hall now appeals.

## I.  Use of Peremptory Challenge

Hall first claims that the trial court erred in overruling his Batson challenge to the State's use of a peremptory strike to remove an African-American from the jury panel. Before addressing this argument, we first set forth the legal standards applicable to this claim of error.

### A.  *Batson Analysis*

Our supreme court recently explained:

Purposeful racial discrimination in selection of the venire violates a
defendant's right to equal protection because it denies him the protection

---

Schumm v. State, 866 N.E.2d 781, 789 (Ind. Ct. App. 2007), clarified on reh'g, 868 N.E.2d 1202 (citing Powers v. Ohio, 499 U.S. 400, 415 (1991)).  This is so because "racial discrimination in jury selection casts doubt on the integrity of the judicial process," and "[t]he overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause."  Powers, 499 U.S. at 411-12 (quotation omitted).  Thus, "[c]lear precedent and compelling rationale dictate that a party may not remove a potential juror based on his or her race, regardless of the race of the opposing party[.]"  Schumm, 866 N.E.2d at 789.

that a trial by jury is intended to secure. The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause.

Addison v. State, 49S05-1105-CR-267, 2012 WL 560081 (Ind. Feb. 22, 2012), slip op. at 6 (citing Batson v. Kentucky, 476 U.S. 79, 86 (1986)); Snyder v. Louisiana, 552 U.S. 472, 478 (2008)) (internal quotation marks omitted).

On the same day that our supreme court issued its opinion in Addison, it also issued an opinion in Cartwright v. State, 82S01-1109-CR-564, 2012 WL 560086 (Ind. Feb. 22, 2012), in which the court noted that "[p]ursuant to Batson and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory challenge was based on race." Id., slip op. at 4.

First, "'a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[.]'" Id. (quoting Snyder, 552 U.S. at 476-77). Using a peremptory strike to remove some African-American jurors does not, by itself, raise an inference of racial discrimination. Addison, slip op. at 6 (citing Kent v. State, 675 N.E.2d 332, 340 (Ind. 1996)). But the removal of the only African-American juror on the panel does raise an inference that the juror was excluded on the basis of race. Id. (citing McCormick v. State, 803 N.E.2d 1108, 1111 (Ind. 2004); McCants v. State, 686 N.E.2d 1281, 1284 (Ind. 1997)).

Second, once the defendant has made a prima facie case, the prosecution must offer a "race-neutral basis for striking the juror in question[.]" Id. (citing Snyder, 552 U.S. at 476-77). An explanation is considered race-neutral if, on its face, it is based on something other than race. Id. (citing Forrest v. State, 757 N.E.2d 1003, 1004 (Ind.

5

2001)). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Addison, slip op. at 7 (quoting Purkett, 514 U.S. at 768). And although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly persuasive, or even plausible. Id.

Lastly, in light of the parties' submissions, the trial court must then determine whether the defendant has shown purposeful discrimination. Id. Although the burden of persuasion on a Batson challenge rests with the party opposing the strike, the third step— determination of discrimination—is the duty of the trial court judge. Id. (citing Jeter, 888 N.E.2d at 1264-65; Miller–El, 545 U.S. at 239). It is for the trial court to evaluate the persuasiveness of the proffered race-neutral justification at the third and step of the analysis. Id. "It is then that 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" Cartwright, slip op. at 4 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). At this final step, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual. Id.

Upon appellate review, we give great deference to the trial court's decision concerning whether a peremptory challenge is discriminatory, and the trial court's decision will be set aside only if it is clearly erroneous. Cartwright, slip op. at 4 (citing Forrest, 757 N.E.2d at 1004; Miller–El v. Cockrell, 537 U.S. 322, 340 (2003)).

B. *Hall's Argument*

Here, the State does not deny that the prosecuting attorney used a peremptory strike to remove J.H., who was the only African-American in the jury pool. Thus, Hall

6

successfully met his initial burden of establishing a prima facie case of racial discrimination. See Addison, slip op. at 6; McCormick, 803 N.E.2d at 1111; McCants, 686 N.E.2d at 1284. The burden then shifted to the prosecuting attorney to offer a race-neutral basis for striking J.H. Id. The prosecuting attorney here stated that J.H. had indicated that he was uncomfortable judging others and that he had a pending criminal charge against him. The trial court then confirmed that J.H. did have a misdemeanor charge pending against him and overruled Hall's Batson objection. Thus, the trial court found that Hall had not established purposeful discrimination.

Giving great deference to the trial court's decision in this matter, we cannot say that the court's conclusion that Hall had not established purposeful discrimination was clearly erroneous. There was nothing "implausible or fantastic" about the State's stated reason for striking J.H. that would indicate it was a pretext for purposeful discrimination. See Addison, slip op. at 6; Purkett, 514 U.S. at 768. Instead, the State gave a valid race-neutral explanation for its use of the peremptory challenge that the trial court accepted as non-discriminatory.

Hall claims that the State should have questioned J.H. further about whether his pending charges would prevent him from performing his duties as a juror. But as the State correctly notes, it did not strike J.H. for cause, but instead used a peremptory strike. Unlike challenges for cause, a peremptory strike is "often exercised on 'hunches' and impressions having to do, perhaps, with a prospective juror's habits, associations, or 'bare

looks.'"[3] Merritt v. State, 488 N.E.2d 340, 341 (Ind. 1986). A party is therefore given broad discretion in its exercise of peremptory strikes and its reasons need not rise to the level of a challenge for cause. Id. at 342.

Under the facts and circumstances of the present case, we cannot say that the trial court clearly erred in concluding that the State's proffered race-neutral reason for striking the only African-American juror on the panel was valid and that Hall had not demonstrated purposeful discrimination.

## II. Sufficiency of the Evidence

Hall also claims that the State presented insufficient evidence to convict him of attempted rape. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To convict Hall of attempted rape, the State was required to show that he took a substantial step toward the commission of the attempted crime of rape. Ind. Code § 35-41-5-1 (2004) ("A person attempts to commit a crime when, acting with the culpability

---

[3] But, of course, a party may not base its peremptory strikes on impermissible reasons such as race, ethnicity, or gender. Addison, slip op. at 6.

8

required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."). A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force commits Class B felony rape. Ind. Code Ann. § 35-42-4-1(a) (2004).

A. *Substantial Step*

Hall claims that his actions fall short of a "substantial step" towards the commission of rape. We disagree. Hall emphasizes that he did not remove his clothes or A.H.'s clothes. But we have held before:

> The fact that a defendant may not attempt to, or is ultimately unsuccessful in, removing his victim's clothing, removing his own clothing, or removing his penis from his clothing does not lead to the conclusion that such defendant . . . did not take a substantial step toward committing the offense of rape.

Hughes v. State, 600 N.E.2d 130, 132 (Ind. Ct. App. 1992) (quoting Tatum v. State, 485 N.E.2d 138, 139 (Ind. Ct. App. 1985)). When determining whether the defendant took a substantial step, our "proper analysis focuses on what the accused has completed, and not upon what he has left undone." Dillon v. State, 448 N.E.2d 21, 25 (Ind. 1983).

Here, Hall climbed on top of A.H. while she slept, threw her phone onto the floor, and demanded that she remove her clothing. He also stated that if he was going to go to jail, it would be for something "better" than not paying child support. When A.H. called to her son, Hall put his hands on her neck and covered her mouth with his hand. All the while, A.H. resisted by kicking and hitting Hall. And when Hall left, he told A.H. that "this isn't over." Tr. pp. 173-74. Moreover, Hall brought condoms with him and

9

dropped some onto the bedroom floor during the attack.[4] From this, the jury could reasonably conclude that Hall took a substantial step toward the commission of the crime of rape. See Neice v. State, 421 N.E.2d 1109, 1111 (Ind. 1981) (concluding that defendant took a substantial step toward attempted crime of rape where he neither exposed his penis nor removed the underclothing of the intended victims); Tatum, 485 N.E.2d at 138 (concluding that evidence was sufficient to support attempted rape conviction where defendant entered bedroom, sat down on bed of thirteen-year-old victim, pushed her shoulders down, put his hand over her mouth, placed himself on top of her, and ran from the room with his pants down after victim kicked him off).

B. *Abandonment*

Hall also claims that there was evidence that he abandoned his crime. Indiana Code section 35-41-3-10 (2004) provides that "[w]ith respect to a charge . . . [of attempt] . . . it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission." This section makes abandonment a legal defense to several

---

[4] In his reply brief, Hall notes that the jury acquitted him of Class B felony burglary and instead found him guilty of the lesser included offense of Class D felony residential entry. The only difference between these two crimes is the element of the intent to commit a felony. Compare Ind. Code § 35-43-2-1 (2004) (defining Class B felony burglary as breaking and entering the dwelling of another person with the intent to commit a felony therein) with Ind. Code § 35-43-2-1.5 (2004) (defining Class D felony residential entry as breaking and entering the dwelling of another person). Hall therefore claims that "[o]ne can only conclude from the guilty verdict on the included offense that the jury did not feel that bringing the condoms to the victim's home constituted a substantial step toward the crime of rape." Appellant's Reply Br. at 3. Hall's argument in this regard is essentially that the verdicts were inconsistent. But our supreme court has held that "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." Beattie v. State, 924 N.E.2d 643, 649 (Ind. 2010). Thus, the fact that the jury acquitted Hall of burglary and found him guilty of the lesser-included offense of residential entry has no impact on our review of the sufficiency of the evidence to support his conviction for attempted rape. See id. at 648-49.

10

inchoate crimes, including attempt. Munford v. State, 923 N.E.2d 11, 18 (Ind. Ct. App. 2010) (citing Smith v. State, 636 N.E.2d 124, 127 (Ind. 1994)). Where attempt is at issue, the accused will be relieved of criminal responsibility if, subsequent to taking a substantial step towards committing a crime but prior to its consummation, he *voluntarily* abandoned his efforts. Id. "'To be considered voluntary, the decision to abandon must originate with the accused and not be the product of extrinsic factors that increase the probability of detection or make more difficult the accomplishment of the criminal purpose.'" Id. (quoting Smith, 636 N.E.2d at 127).

Here, there was ample evidence that Hall did not abandon his crime voluntarily. At trial, Hall never claimed that he abandoned his plan to rape A.H. Instead, he claimed that he never touched her and that he only meant to scare her. Clearly, the jury did not credit this version of events. The evidence favorable to the verdict indicates that Hall did not complete the crime because of A.H.'s verbal and physical resistance to the crime. In other words, the decision to abandon was the product of extrinsic factors that increased the probability of detection and made it more difficult for him to accomplish his criminal purpose; his plans were not "'cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended.'" Munford v. State, 923 N.E.2d 11, 15 (Ind. Ct. App. 2010) (quoting Sheckles v. State, 501 N.E.2d 1053, 1055 (Ind. 1986)).

## Conclusion

The trial court did not clearly err in overruling Hall's Batson objection to the State's use of a peremptory challenge to strike the only African-American juror on the

11

panel, and the State presented sufficient evidence to support Hall's conviction for attempted rape.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.