**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARNELL TINKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1112-CR-587 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D05-1108-FB-193

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Darnell Tinker appeals his conviction for possession of a firearm by a serious violent felon, a Class B felony, and his adjudication as an habitual offender following a jury trial. Tinker presents three issues for our review:

1.   Whether the trial court properly denied Tinker's Batson challenge.

2.   Whether Tinker was denied his right to a public trial under the Sixth Amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution.

3.   Whether the State presented sufficient evidence to support his adjudication as an habitual offender.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 20, 2011, Tinker, a serious violent felon, was arrested for possession of a firearm. At trial, during voir dire, Tinker moved to strike one of two African-American prospective jurors for cause, and the State agreed. The State then moved to strike the second African-American juror for cause, and Tinker asserted a Batson challenge. In response to that challenge, the State gave the following reasons for the strike:

> Well there's a multitude of different reasons but one of the things that she's being stricken for the same reason [sic] we struck the first juror for cause. She has an eighteen[-]year[-]old son who's been shot. She said she does not believe it was handled properly by the police and while she, on rehabilitation from Ms. Kraus, said she thought she could be fair, there's enough concern there on my part to give me reason to believe she can't be fair. But I also have an eighteen[-]year[-]old who is supposedly going to take the stand in a few moments and testify that he put the gun in [Tinker's] car. Which leaves concerns for me as to whether or not they would be sympathetic since she had a son who was shot. She also raised different health issues so that's the reason . . . .

Transcript at 87. The trial court denied Tinker's Batson challenge.

2

The trial was bifurcated, and during the first phase, the jury found Tinker guilty of possession of a firearm by a serious violent felon. During the habitual offender phase, the State presented exhibits 11, 12, 13, and 14, which supported a determination of Tinker's habitual offender status. After those exhibits were admitted into evidence, without objection, the trial court instructed the jury as follows:

> Ladies and gentlemen, my direction, counsel for the State has prepared copies of each of those certified documents just admitted for your use. Ordinarily, as you saw earlier in the trial, as things were published, things were published during the course of the trial. There is some length to these documents, so what I have suggested to him is that we will publish them to you once you retire to deliberate. You'll need to review these documents to assure yourselves . . . that he satisfied the elements of the habitual [offender adjudication], but I thought you would be more comfortable doing that in the jury room rather than out here.

Transcript at 193. Tinker made no objection. Following deliberations, the jury adjudicated Tinker an habitual offender. The trial court entered judgment and sentenced Tinker to forty years executed. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Batson Challenge

Tinker first contends that the trial court erred when it denied his Batson challenge. Peremptory challenges may not be exercised to achieve purposeful racial discrimination. Bradley v. State, 649 N.E.2d 100, 105 (Ind. 1995) (citing Batson v. Kentucky, 476 U.S. 79, 96 (1986)). For a criminal defendant to establish a prima facie case of purposeful racial discrimination in the selection of a jury, it must be shown that (1) the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group from the venire; and (2) the facts and any other relevant circumstances of the

3

defendant's case raise an inference that the prosecutor used that practice to exclude venirepersons from the jury due to their race. Id. (citing Batson, 476 U.S. at 96). Once such a prima facie showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. Id. (citing Batson, 476 U.S. at 97). The trial court then has a duty to determine whether the defendant has established purposeful discrimination. Id. (citing Batson, 476 U.S. at 98). The trial court's finding is accorded great deference. Id. (citing Batson, 476 U.S. at 98).

Here, again, there were two African-American prospective jurors, and the parties agreed to strike the first one for cause. But when the State attempted to strike the second for cause, Tinker made a Batson challenge. Because that juror, Juror 40, was the last remaining African-American venireperson after the first one was stricken from the panel, an inference was established that the juror was excluded on the basis of race. See McCants v. State, 686 N.E.2d 1281, 1284 (Ind. 1997). The burden then shifted to the State to offer a race-neutral explanation for peremptorily challenging this prospective juror. See id.

The State then provided a "multitude of different reasons," including the fact that Juror 40 had an eighteen-year-old son who had been shot, and she believed that it had not been "handled properly by the police." Transcript at 87. The State also pointed out that Juror 40 "raised different health issues." Id. The trial court found that the State had satisfied its burden to provide race-neutral reasons for the strike and dismissed Juror 40.

On appeal, Tinker contends that the State's rationale for the strike "was not based on the facts." Brief of Appellant. But Tinker does not provide citations to the record in

4

support of that contention. On the other hand, the State directs us to the pages in the transcript where its colloquy with Juror 40 can be found. Juror 40 stated that she was "nervous" and that she "ha[dn't] eaten and [her] blood pressure [was] probably sky high." Transcript at 73. When asked whether she had "any issues right now that you feel uncomfortable health[-]wise," Juror 40 responded, "Yes." Id. The prosecutor then asked follow up questions about her health, but the transcript shows that Juror 40's responses were inaudible. Finally, Juror 40 stated that she has a son who was shot "several years back" and that he survived, but that she had "issues with that." Id. at 74. When defense counsel asked Juror 40 to clarify what she meant by "issues," she explained that her issue "is guns." Id. at 77. And Juror 40 went on to state that she was "not sure in the back of [her] mind [that] the situation was handled correctly [by police]." Id. at 77-78.

Tinker urges us to find that Juror 40's responses indicate that she would have been biased in favor of the State and, therefore, the State's reasons for the strike are not supported. But another reasonable interpretation, given that she expressed negative feelings about law enforcement, is that she harbors ill will towards the State. Further, Juror 40's audible statements regarding her health problems support the State's comment that her health was a factor in the strike. Again, we give "great deference" to the trial court in this determination. Batson, 476 U.S. at 98. Here, Tinker has not demonstrated that the trial court's rejection of his Batson challenge was clearly erroneous. Tinker is not entitled to a new trial on this basis.

## Issue Two:  Public Trial

Tinker next contends that "[t]he failure to have the jury review [the State's exhibits 11, 12, 13, and 14] in public and in the presence of the Defendant and counsel was a violation of Article I, Section 13 of the Indiana Constitution and the Sixth Amendment [to] the United States Constitution."  Brief of Appellant at 14.  Both Article I, Section 13 and the Sixth Amendment provide in relevant part that an accused shall have a right to a public trial.  In Williams v. State, 690 N.E.2d 162, 167 (Ind. 1997), our supreme court addressed the right to a fair trial under both the state and federal constitutions as follows:

> The right to a public trial has long been recognized as a fundamental right of the accused.   [In re ]Oliver, 333 U.S. [257,] 266-67; Hackett v. State, 266 Ind. [103,] 109, 360 N.E.2d [1000,] 1004[ (1977)].  It helps ensure a fair trial because "the presence of interested spectators may keep [the accused's] triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ."  Waller [v. Georgia], 467 U.S. [39,] 46 (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 380 (1979) (in turn quoting Oliver, 333 U.S. at 270 n. 25)).  It protects the accused by allowing the public to assess the fairness of the proceedings.  In addition, it encourages witnesses to come forward, and discourages perjury. Waller, 467 U.S. at 46.  In addition to the rights of the defendant, the public trial implicates the First Amendment right of the press and public to attend a criminal trial or other proceeding.  However, neither right is absolute. Complete or partial exclusion of the public may be justified if a court finds "that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."  Waller, 467 U.S. at 45.  Examples of valid exclusions include forbidding the televising of a public trial and protecting a witness fearful of retaliation by those attending the trial.

(Some citations omitted).

Here, Tinker does not explain how the right to a public trial is implicated in the trial court's decision to publish the exhibits to the jury at the beginning of their

deliberations. The exhibits were offered and admitted into evidence in open court and in his presence, and Tinker made no objection to the admission of those exhibits. Neither did Tinker object when the trial court announced that, given that the exhibits were voluminous, the jurors "would be more comfortable [reviewing the documents] in the jury room rather than [in the courtroom]." Transcript at 193. Tinker makes no contention that the trial was closed to the public. Instead, he avers that he had a right to "observe the demeanor of the jury as they observe[d] the evidence[.]" Brief of Appellant at 15. We hold that Tinker has not shown that he was denied his right to a public trial.

### Issue Three: Sufficiency of the Evidence

Finally, Tinker contends that the State presented insufficient evidence to support his adjudication as an habitual offender. Upon a challenge to the sufficiency of the evidence for an habitual offender determination, the appellate court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we examine only the evidence most favorable to the judgment, together with all of the reasonable and logical inferences to be drawn therefrom. Woods v. State, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010). The habitual offender determination will be sustained on appeal so long as there is substantial evidence of probative value supporting the judgment. Id.

A person is an habitual offender if the State proves beyond a reasonable doubt that he has two prior, unrelated felony convictions. Ind. Code § 35-50-2-8(g). To support an habitual offender finding, (1) the second prior unrelated felony must be committed after sentencing for the first prior unrelated felony conviction; and (2) the offense for which the State seeks to have the person sentenced as an habitual offender must be committed

7

after sentencing for the second prior unrelated felony conviction. Ind. Code § 35-50-2-8(c).

Here, the State presented the following evidence in support of the habitual offender charge: documents showing that Tinker had previously been convicted of armed robbery and forgery; a fingerprint card dated March 18, 1983, signed by "Darnell Tinker" and showing a typewritten name of "Darrell Tinker" with an alias of "Darnell NMH Tinker;" and a fingerprint card showing Tinker's fingerprints taken on the morning of trial in this case. See State's Exhibit 13. The State also presented testimony by Eric Black, a fingerprint expert, that Tinker's fingerprints made the morning of trial matched those shown in State's Exhibit 13. And Black testified that Tinker is the same man who previously had been convicted of armed robbery and forgery.

Still, Tinker points out that the State did not present evidence to show his date of birth or social security number and that the 1983 signature card identifies the fingerprints as belonging to "Darrell Tinker" and not "Darnell Tinker." But Tinker misses the point. Based upon fingerprint evidence, Black testified that Tinker is the same man who had previously been convicted of two felonies. There was ample evidence that Tinker, a/k/a Darrell Tinker, had committed armed robbery and forgery. Tinker's argument on appeal amounts to a request that we reweigh the evidence, which we will not do. The State submitted sufficient evidence to support his adjudication as an habitual offender.

Affirmed.

RILEY, J., and DARDEN, Sr.J., concur.

8