Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2013, 7:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK S. LENYO**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH E. STAMBAUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1212-CR-545 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1205-FB-68

**July 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Joseph E. Stambaugh (Stambaugh), appeals his conviction for Count I, operating a motor vehicle after lifetime suspension of driving privileges, a Class C felony, Ind. Code § 9-30-10-17; Count II, resisting law enforcement, a Class D felony, I.C. § 35-44.1-3-1; Count III, possession of cocaine, a Class D felony, I.C. § 35-48-4-6(a); Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; and Count V, false informing, a Class B misdemeanor, I.C. § 35-44.1-2-3(d)(1).

We affirm.

## ISSUES

Stambaugh raises three issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by denying Stambaugh's motion for a mistrial;

(2) Whether the trial court abused its discretion by refusing to dismiss a juror; and

(3) Whether the trial court properly granted the State's Motion in Limine.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2012, at approximately 5:00 p.m., Officer Kelly Hibbs (Officer Hibbs) with the South Bend Police Department was on patrol in a fully-marked police vehicle while wearing a uniform. While stopped at a stoplight at Edison Road and South Bend Avenue, in South Bend, Indiana, Officer Hibbs entered the license plate number of the blue Camaro that was stopped in front of him into a computer program. The

2

computer program verified that the license plate number belonged to a different vehicle than the blue Camaro.

After the vehicle turned at a stoplight and stopped in a liquor store parking lot, Officer Hibbs conducted a traffic stop. He parked his vehicle with the front of his car perpendicular to the driver door of the blue Camaro. As Officer Hibbs approached the vehicle, he saw only one person, later identified as Stambaugh, and asked him for his name and date of birth. Officer Hibbs also asked Stambaugh to whom the vehicle belonged. Stambaugh provided his name as "David Bell" and said that he had just purchased the vehicle and that the license plate was his girlfriend's. (Transcript p. 195). However, Stambaugh did not provide any registration to show who owned the vehicle.

When Officer Hibbs went back to his squad car and entered "David Bell" and the date of birth that Stambaugh had provided to him in the computer program, the response he obtained was "not on file, nothing found." (Tr. pp. 195-96). A return of "not on file" indicates that a person with that name and birthdate has never held an Indiana license. Thus, Officer Hibbs requested that a second unit assist him. Officer Miranda Baker (Officer Baker), with the South Bend Police Department, arrived and they approached the driver door of Stambaugh's vehicle. Officer Hibbs asked Stambaugh whether the information he provided was correct because there was no indication that a person with the name "David Bell" had a license. Stambaugh responded, "There [are] plenty of people with that name on Facebook, so I'm not sure why you're not getting anything back." (Tr. p. 197).

3

Officer Hibbs asked Stambaugh to get rid of his cigarette and step out of the vehicle. As Officer Hibbs opened the driver's side door, Stambaugh moved his hand towards the center console as if he was going to extinguish his cigarette, but instead he shifted the vehicle into drive. Stambaugh ran over a curb and drove into oncoming traffic. Officer Hibbs, along with two other units, pursued Stambaugh.

While on Eddy Street, Stambaugh collided head-on with the police vehicle driven by Officer Houser. Officer Hibbs stopped his patrol car behind the Camaro and exited his vehicle in case Stambaugh attempted to flee on foot. However, Stambaugh reversed his car after colliding with Officer Houser's vehicle, and came "pretty close" to hitting Officer Hibbs. (Tr. p. 207). Officer Hibbs heard a gunshot as Stambaugh began driving forward. Stambaugh's vehicle struck the sign for Pearly Elementary School that was located in front of the school. Officer Hibbs removed Stambaugh from his vehicle and handcuffed him. Officer Hibbs found an I.D. card in Stambaugh's pocket that identified him as Stambaugh. Officer Hibbs' squad car was equipped with audio and video recording equipment that activates thirty seconds before he activates his lights, and it takes a recording of what is directly in front of the vehicle. After obtaining a warrant, a search of the vehicle revealed an Adidas bag with two baggies containing cocaine. The Officers also located a baggy containing marijuana inside the vehicle.

On May 14, 2012 the State filed an Information charging Stambaugh with Count I, operating a motor vehicle after lifetime suspension of driving privileges, a Class C felony, I.C. § 9-30-10-17; Count II, resisting law enforcement, a Class D felony, I.C. §

4

35-44.1-3-1; Count III, possession of cocaine, a Class D felony, I.C. § 35-48-4-6(a); Count IV, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; and Count V, false informing, a Class B misdemeanor, I.C. § 35-44.1-2-3(d)(1). On October 29, 2012, the State filed a motion in limine that sought to prohibit Stambaugh or defense witnesses from commenting on the following:

1. The number of bullets fired by police.
2. The number of times the defendant's vehicle was hit by bullets.
3. The number of times the defendant was hit by bullets.
4. The injuries the defendant received.
5. The treatment the defendant received.
6. Any future treatment the defendant is expected to receive.
7. The change in the physical or mental condition of the defendant since May 12, 2012.

(App. p. 17). The State's motion in limine alleged that this information was irrelevant to the issues at trial. However, the trial court ruled that facts indicating that the police fired their weapons at Stambaugh or his vehicle and whether the vehicle and Stambaugh were hit by those bullets were relevant because those facts were "inextricably interwoven with the facts and the nature and circumstances of the offenses so it cannot be separated out from the crimes that are charged." (Tr. pp. 146-47). On the other hand, the trial court ruled that the exact number of times that Stambaugh was hit by the bullets, the exact nature of his injuries, the treatment he received, any future treatment, and any change in the physical or mental conditions of Stambaugh were not relevant to this case.

That same day, Stambaugh's jury trial commenced. During *voir dire*, prospective juror Michael Pajor (Pajor) indicated that he worked in "probation, and [Stambaugh] was actually under [his] supervision." (Tr. p. 24). Pajor clarified that the probation was for

5

the underlying charge of Stambaugh's lifetime suspension of driving privileges. The trial court excused Pajor, and Stambaugh moved for a mistrial. The trial court denied Stambaugh's motion because the jury had already been informed that Stambaugh had a lifetime suspension of driving privileges as of November 4, 2010, when they were told that he was charged with operating a motor vehicle after having forfeited his driving privileges for life.

On October 30, 2012, during the jury trial proceedings, the bailiff received a note from a juror which read, "I had a date in approximately February 2012 with Officer Hibbs. I do not know him beyond this, however." (Tr. pp. 228-29). The trial court brought Juror Heather-Anne Rhodes (Juror Rhodes) into court and questioned her about the note she gave the bailiff:

> [TRIAL COURT]: […] And let me ask you this: Was there any further relationship beyond that February of 2012 date?
>
> [JUROR RHODES]: No.
>
> [TRIAL COURT]: Okay. Is there anything about that, which you think would cause you not to be a fair juror in this case?
>
> [JUROR RHODES]: No.
>
> [TRIAL COURT]: And you could judge the testimony of not only Officer Hibbs' testimony, but the testimony of any other witness along the lines of the rules that I read to you in the preliminary instructions?
>
> [JUROR RHODES]: I think so.
>
> [TRIAL COURT]: Is there any other reason at this point that this fact would make you not to be a fair and impartial juror in this case?
>
> [JUROR RHODES]: No.

6

[TRIAL COURT]:  Would you give Officer Hibbs' testimony a plus or minus, because of that?

[JUROR RHODES]:  No.

(Tr. p. 234-35).  The trial court decided that Juror Rhodes would continue as a juror in this case.  Neither the State nor the defense had any questions or other objection to make about this. (Tr. p. 235).

On November 1, 2012, at the close of the evidence, the jury found Stambaugh guilty on all five Counts.  On November 28, 2012, Stambaugh was sentenced to seven years on Count I, three years on Count III, and one year on Count IV.  These sentences were ordered to run concurrently.  With regard to Count II and Count V, the trial court sentenced Stambaugh to three years on Count II and then 180 days on Count V, and these sentences were ordered to run concurrently to each other, but consecutively to Counts I, III and IV, for an aggregate sentence of ten years.

Stambaugh now appeals.  Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I.  *Motion for Mistrial*

Stambaugh contends that the trial court abused its discretion when it denied his motion for mistrial which he made during the *voir dire* proceedings.  Specifically, he claims that Pajor's responses that he was Stambaugh's probation officer, who was supervising him for a prior offense, subsequently tainted the jury and prevented him from receiving a fair trial.  Whether to grant or deny a motion for mistrial is a decision left to

the sound discretion of the trial court. *Alvies v. State,* 795 N.E.2d 493, 506 (Ind. Ct. App. 2003). We will reverse the trial court's ruling only upon an abuse of that discretion. *Id.* We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Id.*

To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision rather than upon the degree of impropriety of the conduct. *See Leach v. State*, 699 N.E.2d 641, 644 (Ind. 1998).

We have previously noted that a motion for a mistrial during *voir dire* is not a proper motion because *voir dire* is not part of a trial, and the trial does not begin until the jury is impaneled and the cause is submitted. *Nix v. State* 166 N.E.2d 326 (Ind. 1960); *see also Bardonner v. State*, 587 N.E.2d 1353, 1364. Instead, a defendant should have moved to strike, discharge the jury panel, or challenge the array. *Id*.; *see also Utterback v. State*, 310 N.E.2d 552, 555 (Ind. 1974). Therefore, the motion for a mistrial was properly denied in this case.

## II. *Dismissal of Juror*

Next, Stambaugh contends that the trial court abused its discretion when it refused to dismiss a juror who went on one date with the State's witness. Where an "inference of

8

implied juror bias arises, a trial court should analyze such potential bias by considering the nature of the connection and any indications of partiality; the court must weigh the nature and extent of the relationship versus the ability of the juror to remain impartial." *Alvies v. State*, 795 N.E.2d 493, 499 (Ind. Ct. App. 2003). Furthermore, it is for the trial court to determine whether a juror is biased for or against the defendant; only if the defendant was placed in substantial peril will an appellate court find an abuse of discretion. *Id.* Timely disclosure of a juror's relationship with a witness or party, coupled with an assertion that the juror will remain impartial, adequately protects a defendant's right to an impartial jury. *McCants v. State*, 686 N.E.2d 1281, 1285 (Ind. 1997). Objections relating to the qualification of a juror must be timely made or they are waived. *Smith v. State*, 477 N.E.2d 311, 315 (Ind. Ct. App. 1985).

During the second day of the trial proceedings, Juror Rhodes informed the trial court that she was familiar with Officer Hibbs from a single date that occurred over six months before the trial. Because of this information, the trial court questioned Juror Rhodes in the presence of both counsel. The trial court ruled that Juror Rhodes could remain on the jury panel. Stambaugh did not make any further record nor objected to Juror Rhodes remaining on the jury panel. Accordingly, because Stambaugh failed to timely object, he waived the error. *Short v. State*, 443 N.E.2d 298, 306 (Ind. 1982).

Waiver notwithstanding, Juror Rhodes first stated that she did not recognize Officer Hibbs when his name was mentioned, and that it was only after she actually saw Officer Hibbs when he testified in person that she recognized him, after which she

9

notified the trial court. Juror Rhodes explained that she did not know Officer Hibbs other than that single date, and her experience would not cause her to view his testimony differently than any other witness, and she would remain a fair and impartial juror in this matter. Based on this evidence, we cannot conclude that Stambaugh was placed in substantial peril. Thus, the trial court did not abuse its discretion by allowing Juror Rhodes to remain as a juror in this case.

### III. *Motion in Limine*

Lastly, Stambaugh contends that the trial court erred in granting, in part, the State's Motion in Limine prohibiting any mention of the number of times Stambaugh was shot by the Officers and the nature and extent of his injuries. The trial court has broad discretion in ruling on the admission or exclusion of evidence. *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012), *dist'g by Palilonis v. State*, 970 N.E.2d 713 (Ind. Ct. App. 2012). The trial court's ruling on review of admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*.

Stambaugh contends that the State introduced DVDs of the police officers' in-car videos, but the recordings were redacted to "exclude most of the information sought by the defense in the case." (Appellant's Br. p. 17). Stambaugh argues that the number of times he was hit by the gun shots along with his injuries and treatment of those injuries should be admitted into evidence under the completion doctrine. The completion

doctrine applies when part of a writing or recorded statement is introduced and allows an adverse party to request that other parts be introduced, to provide a context for otherwise isolated comments when fairness requires it. *Barnett v. State*, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009). The rule may be invoked to admit omitted portions of a statement in order to (1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) insure a fair and impartial understanding of the admitted portion. *Lieberenz v. State*, 717 N.E.2d 1242, 1248 (Ind. Ct. App. 1999), *trans. denied*. However, a court need not admit the remainder of the statement, or portions thereof, that are neither explanatory of nor relevant to the portions already introduced. *Id.*

Here, Stambaugh never sought to play the redacted portion for the trial court or enter it into the record for appellate review. Nonetheless, under the completion doctrine, a court need not admit the remainder of the statement, or portions thereof, that are neither explanatory of nor relevant to the portions already introduced. *Id.* Here, Stambaugh failed to establish that the redacted videotape created confusion or misled the jury. Thus, the videotape entered into evidence was properly admitted.

Furthermore, the trial court excluded the evidence because it found that it was irrelevant in this case. Indiana Evidence Rule 401 defines relevant evidence as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." When the trial court granted the State's Motion in Limine that sought to

11

exclude evidence relating to injuries Stambaugh received from the police shooting, the trial court specifically advised Stambaugh that the ruling was only preliminary and could be reconsidered in light of the evidence presented at trial. Stambaugh never requested the trial court to reconsider, nor did he present any evidence to make the excluded matters relevant.

Stambaugh was not able to show that the injuries he received from the police had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would [have been] without the evidence." Ind. Evid. Rule 401. When the police started shooting, Stambaugh already had resisted law enforcement, fled from a traffic stop, driven into oncoming traffic, and almost hit a police officer, all while being pursued by three marked police cars with sirens activated. The number of times Stambaugh was shot by police and the injuries he has sustained had no bearing on whether or not Stambaugh had committed the crimes he was charged with, and moreover, was not relevant evidence. Thus, the trial court properly excluded the evidence.

### CONCLUSION

Based on the foregoing, we conclude that (1) the trial court properly denied the motion for mistrial; (2) the trial court properly refused to dismiss a juror; and (3) the trial court did not err in granting, in part, the State's Motion in Limine.

Affirmed.

12

BROWN, J. concurs

BRADFORD, J. concurs with separate concurring opinion

# IN THE
# COURT OF APPEALS OF INDIANA

JOSEPH E. STAMBAUGH,     )
                             )
    Appellant-Defendant,    )
                             )
        vs.              )     No. 71A03-1212-CR-545
                             )
STATE OF INDIANA,      )
                             )
    Appellee-Plaintiff.     )

**BRADFORD, Judge, concurring.**

I concur with the majority in all respects. However, I write separately to add that even if Stambaugh would have made an appropriate motion during voir dire, I believe that the denial of said motion could, at most, be considered harmless because the challenged statements were cumulative of other evidence that was subsequently admitted without objection during trial.

The Indiana Supreme Court has held that it is well established that the exposure of facts to the jury that are cumulative of other properly admitted evidence does not require

14

reversal, but rather is, at most, harmless.  *See generally Martin v. State*, 736 N.E.2d 1213, 1219 (Ind. 2000) (providing that it is well settled that the erroneous admission of evidence is harmless and does not require reversal if other evidence having the same probative value is admitted without objection or contradiction).  In the instant matter, Prospective Juror Pajor revealed no information before the other prospective jurors that was not subsequently presented without objection to the jury during the State's presentation of evidence.  During voir dire, upon questioning by the trial court as to how he was familiar with Stambaugh, Prospective Juror Pajor indicated that he was Stambaugh's probation officer for the underlying charge relating to Stambaugh's lifetime suspension of his driving privileges.  During trial, the State introduced an exhibit that contained the information showing that Stambaugh had previously received a lifetime suspension of his driving privileges.  Stambaugh did not object to the admission of this exhibit, and it was admitted into trial.  Accordingly, because Prospective Juror Pajor's statement relating to the lifetime suspension of Stambaugh's driving privileges was cumulative of evidence that was subsequently admitted without objection at trial, I would further conclude that even if Stambaugh would have made an appropriate motion during voir dire, the denial of said motion could, at most, be considered harmless.